WILLIAM W. WELCH *et al.*

*v.*

AUGUSTUS S. POST.

99   471
122   427
122   438
122   440
99   471
124   149
99      471
d91a  ²652

*Filed at Mt. Vernon June 21, 1881.*

1. STATUTE—*as embracing more than one subject expressed in title.* The court is inclined to hold that the act of February 28, 1869, amendatory of the charter of the Illinois Southeastern Railway Company, in so far as it authorizes towns, etc., along or near the route of the road to subscribe to the stock of the company, or make donations and issue bonds therefor, is in violation of sec. 23, art. 3, of the constitution of 1848, which declares that no private or local law shall embrace more than one subject, which shall be expressed in the title.

2. MUNICIPAL BONDS—*express power required for their issue.* Making donations to railway companies, and issuing interest bearing bonds in payment thereof, are not among the usual or implied powers possessed by municipal corporations, and without express power given by statute to issue such bonds, they will be void in the hands of any and all persons.

3. SAME—*of the power to issue—statute construed.* Where a railway charter authorized any incorporated city or *town* on the line of the proposed road to make donations to the company, not exceeding $10,000, to be ·paid by immediate taxation, giving no power to issue bonds in payment, and an amendment to the charter named villages, counties and townships as corporations to which power was given, on a vote of the people, to make donations to the proposed railroad, and to issue interest bearing bonds in payment thereof: *Held,* that bonds issued by an incorporated *town* after the passage of the amendatory act of 1869, upon a vote for a donation to the railway company, were illegal and void, being issued without sanction of law. The word *town* being omitted from the act authorizing the issue of bonds, can not be supplied by judicial construction.

4. CHANCERY—*jurisdiction.* While it may be that a court of chancery has no jurisdiction to declare municipal bonds void which are held by non-residents who do not appear in the suit, yet the court has jurisdiction as to any such holder who appears and contests the bill on its merits, and also to enjoin the local officers from the collection of taxes to pay such bonds or the interest thereon.

WRIT OF ERROR to the Circuit Court of White county; the Hon. C. S. CONGER, Judge, presiding.

Mr. JAMES McCARTNEY, for the plaintiffs in error.

Messrs. HANNA & ADAMS, for the defendant in error.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This bill was brought by citizens, property owners and tax-payers in the village of Enfield, to restrain the collection of taxes levied on the property of complainants for the purpose of paying any portion of the principal or interest on bonds issued by the town of Enfield to the Springfield and Illinois Southeastern Railway Company, dated January 1, 1871, and to have such bonds declared null and void.

It is set forth in the bill, as the fact is, that under the act of March, 1869, the village of Enfield was incorporated under the name of the town of Enfield, and that while so incorporated all the acts charged were done. In 1867, by an act of the legislature, the Illinois Southeastern Railway Company was incorporated. By that act any incorporated town or city might make donations to the railway company, not exceeding $10,000. An act amendatory of the act of 1867, passed February 28, 1869, authorized any village, city, county or township to make donations to the railway company, and it was therein provided, that if the majority of the legal voters of any such municipality, as evidenced by the votes cast at an election held for that purpose, were in favor of such donation, the corporate authorities of such village, city, county or township should issue bonds, with interest coupons attached, for the payment thereof. Under the power supposed to have been conferred by the act of 1867, incorporating the Illinois Southeastern Railway Company, and the amendatory act of 1869, the town of Enfield, at an election held on the 11th day of June, 1870, after due notice had been given, voted a donation of $7000 to the Springfield and Illinois Southeastern Railway Company, and afterwards issued and delivered to the president of the company, bonds for the payment of the same, dated January 1, 1871, with coupons

attached for the semi-annual interest, at the rate of ten per cent per annum.

As a ground of relief, it is alleged in the bill there was no authority of law for the issuing of any bonds by any incorporated *town* to the railway company, whatever; that section 11 of the charter of the company, passed in 1867, provided for donations by incorporated cities and towns, but made no provision for the issuing of bonds, and that the act of 1869, amendatory thereof, only made provision for the issuing of bonds by villages, cities, counties and townships, thereby excluding *towns* from the right to issue bonds, leaving such towns only the right, under the law of 1867, to make donations to be paid by a levy of a tax, and not otherwise. The bill also contains an allegation, which is not denied, that the town of Enfield was incorporated and acted under the law of 1869, incorporating it as a town, until August, 1875. The relief asked by the bill on the final hearing was, that the bonds issued by the town of Enfield to the Springfield and Illinois Southeastern Railway Company, dated January 1, 1871, might be declared null and void, and of no effect, in whosesoever hands the same may be, and that the village and county collectors, and their successors in office, be forever enjoined from collecting or attempting to collect any tax levied for the payment of the principal of the bonds or the coupons thereto attached, or detached.

Originally, only the village and county collectors of taxes and the unknown holders of the bonds were made defendants. Service of process was had on the resident defendants, and publication was made as to the unknown bondholders. No one appearing to answer the bill, it was taken for confessed as to all of defendants at the April term, 1877, and a decree rendered declaring the bonds null and void, and making the injunction previously issued perpetual. Afterwards, at the October term, 1879, of the court, Augustus T. Post, a citizen and resident of the State of New York, presented to the court a petition under the statute, stating he was the owner of the

bonds in litigation; that he was never served with process in the cause, and had no knowledge of the proceedings therein until after default was entered against the defendants. The prayer of his petition was granted, and the cause re-instated for further hearing. The allegations of the bill as to the incorporation of the town of Enfield and the issuing of bonds, as stated, are all admitted in the answer of respondents, and he alleges he is the owner of one of the bonds issued to the railway company, upon which all interest was paid for the years 1872 to 1875, both years inclusive.

A replication was filed to the answer of respondent, and the cause submitted for decision upon a stipulation as to the facts, substantially as follows: It was admitted the election held to make the donation to the railway company was regularly held, after due notice had been given to the legal voters of the town, that the railroad was constructed, and bonds and coupons, were issued and delivered, and interest paid, until this bill was filed; that when the vote was taken for a donation, Enfield was an incorporated town, incorporated and acting under a special act of the legislature, and was such when the bonds were issued; that the donation was voted and the bonds issued to the Springfield and Illinois Southeastern Railway Company, incorporated under the laws of 1867 and 1869, and consolidated December 3, 1869, and that said bonds were delivered about June 1, 1871; that no vote was taken to issue such bonds other than the vote for donation, held on June 11, 1870. The court dissolved the injunction previously issued, and dismissed the bill. Complainants bring the case to this court.

The question is directly made, the amendatory act of 1869 violates the constitution of 1848, article 3, section 23, which provides: "No private or local law which may be passed by the General Assembly shall embrace more than one subject, and that shall be expressed in the title." On the authority of *Middleport* v. *Ætna Life Ins. Co.* 82 Ill. 562, we are inclined to hold the point is well taken, and if so, it

would be conclusive of the whole case. Without passing on
this question definitely, there is another view of the case
that is equally conclusive, upon which the decision may be
placed. Making donations to railway corporations, and
issuing interest bearing bonds in payment thereof, are not
among the usual or implied powers possessed by municipal
corporations. Unless, therefore, express power was given
by statute to the town of Enfield to issue the bonds involved
in this litigation, it will be conceded such bonds are void
in whosesoever hands they may be found. Hence it will be
necessary to examine and determine definitely what powers
the General Assembly has seen fit to confer on the town of
Enfield in that regard.

As we have seen, the town of Enfield was incorporated
under a special charter passed in March, 1869. The charter
contained only the usual provisions found in such charters.
No power was given the corporation created to make dona-
tions to railway companies, and make provision for the pay-
ment, by tax or otherwise. The act of 1867, incorporating
the Illinois Southeastern Railway Company, did provide
that any incorporated city or town on the line of the pro-
posed railroad might make donations to the company, not
exceeding $10,000, to be paid by taxation. That act made
no provision for and gave the corporation no authority to
issue bonds in payment of such donations. Section 10, of the
act of 1869, amendatory of the act of 1867, enumerated vil-
lages, cities, counties and townships as among the corpora-
tions to which power was expressly given, when the same
should be voted by the legal voters of such municipalities, to
make donations to the proposed railroad, and to issue interest
bearing bonds in payment thereof. Acting under the acts
cited, the town of Enfield issued the bonds in question, after a
donation of the amount of the bonds had been voted by the
legal voters of the town at an election called for that purpose.
It is stipulated, however, that no vote was taken to issue such
bonds, other than the vote for a donation to the railway com-

pany. It will be specially noted, the original charter of the
railway company only conferred power on towns on the
line of the railroad to make donations to the company,
to be paid by taxation, and hence no rightful authority
existed under that act to issue the bonds in question. *Town
of Middleport* v. *Ætna Life Ins. Co.* 82 Ill. 562. Nor is there
any authority found in the amendatory act of 1869 that at
all enlarges the powers of the town of Enfield in the matter
of issuing bonds. Incorporated towns are omitted from the
municipal corporations enumerated that may make dona-
tions to the railway company, and issue interest bearing
bonds in payment. Why incorporated towns were omitted
in that act can not now be known. It may have been done
advisedly or inadvertently. In either case the effect is pre-
cisely the same. By the original act, as we have seen, incor-
porated towns have the undoubted right to make donations
to the railway company, payable by taxation, but had no
right to issue bonds, maturing in the future, in payment.
The amendatory act does not even purport to confer addi-
tional authority on incorporated towns in that regard, neither
in the title nor the text of the bill. What seems to have
been deliberately omitted by the General Assembly can not
be supplied by judicial construction. That would invade the
legislative department, which the court has neither the right
nor inclination to do.

In *Pitzman* v. *Village of Freeburg*, 92 Ill. 111, it was held
the act of November 6, 1849, that authorized counties and
cities to make subscriptions or purchases of shares of capital
stock in any railway company, had no reference whatever to vil-
lages. The language employed only related to counties and
cities, and the terms used could not be enlarged, by construc-
tion, so as to include municipal corporations not mentioned.
That is precisely the case here. Towns are omitted for some
reason from the corporations authorized to issue bonds in
payment of donations voted. Such extraordinary power will

not be held to exist in a purely municipal corporation unless expressly conferred by statute. .

*Burke* v. *Monroe County,* 77 Ill. 610, can not be regarded as an authority against this view of the law. The act construed in that case was one to restore uniformity in the taxation of real and personal property in the counties and cities of the State. In one part of the act incorporated towns were expressly mentioned, and it was thought the context authorized the construction that the word *city,* as used in the repealing clause of the act, was intended to and did include incorporated towns.

Nor does *Martin* v. *The People,* 87 Ill. 524, aid the construction insisted upon by defendant. That case holds that under the words, "any city, incorporated town or village," found in the 168th section of the act in relation to "cities and villages," the "town of Lake" is one of the municipal incorporations which, by that section, are authorized to avail themselves of the provisions of article 9 of that act, as an amendment to their charters. .

Keeping in mind, as must be done, there is no implied authority in municipal corporations to make donations to railway companies, and to issue interest bearing bonds in payment, it must appear there is express enabling legislation to that effect before municipal corporations can properly assume to exercise such extraordinary powers. No such authority is to be found anywhere, in any public or private law of this State, applicable to the town of Enfield, at the time that corporation undertook to and did issue the bond held and owned by respondent, and having been issued without authority of law, such bond constitutes no valid obligation that can be enforced against the municipality.

It is said the holders and owners of the bonds in this case all reside without the jurisdiction of the court in which the cause was tried, and have these bonds with them, and the argument is, that as both the persons to be affected and the property to be operated upon are without the State, the court

was powerless to act, and for this reason, if for none other, the bill should have been dismissed, as it was. This is a misapprehension of the object and scope of the bill. The bonds are of the denomination of $1000 each, and six of them, it appears from the record, are held by non-resident owner or owners, and the bonds may be presumed to be with them. As neither the bonds nor the owners are subject to the jurisdiction of the court, it may be conceded that no decree could be rendered that would operate on the bonds or the owners. The owner of one bond, however, although a non-resident of the State, has submitted to the jurisdiction of the court by answering the bill, and his interests in the subject matter of the suit may be determined by the decree to be rendered. But other relief is sought by the bill, and may be granted as to resident defendants, as to matters clearly within the jurisdiction of the court. On the hypothesis the bonds are void because issued without authority of law, no reason can be assigned why a court of chancery has not jurisdiction to enjoin the local officers from collecting taxes levied for their payment, otherwise irreparable injury might be done. As the parties and the subject to be affected by the decree are both within the jurisdiction of the court, it is not perceived how the non-residence of the owners of the bonds would affect the jurisdiction of the court to administer relief on this branch of the case.

The decree of the circuit court will be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Decree reversed.*

DICKEY and SHELDON, J.J.: We do not recognize any distinction, under the laws of this State, between incorporated towns and incorporated villages, but consider such terms, "towns and villages," to be there used synonymously; and we regard *Martin* v. *The People,* 87 Ill. 524, as so deciding.