## ENFIELD *v.* JORDAN.

.ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF ILLINOIS.

Submitted November 24, 1886. — Decided January 10, 1887.

In Illinois an incorporated "town" and an incorporated "village" are one and the same thing. *Welch* v. *Post*, 99 Ill. 471, overruled; and *Martin* v. *People*, 87 Ill. 524, followed.

The provision in the act of February 24, 1869, of the legislature of Illinois, giving authority to "any village, city, county, or township organized under the township organization law, or any other law of the state, along or near the route of the railway" therein mentioned, "to subscribe to the stock of the railroad company, or make donations to it," applies to the stock of a town along or near the route.

The proviso in the clause of the constitution of Illinois regarding municipal subscriptions to the stock of, or donations or loan of credit to, railroads or private corporations, applies to donations as well as to subscriptions to stock.

When a question in a certificate of division is stated in broad and indefinite terms, which admit of one answer under one set of circumstances, and of a different answer under another set of circumstances, this court must regard it as immaterial to the decision of the case.

The pendency of a suit relating to the validity of negotiable paper not yet due is not constructive notice to subsequent holders thereof before maturity; and this general rule cannot be changed by state laws or decisions, so as to affect the rights of persons not residing and not being within the state.

In Illinois the making the place of payment of a municipal bond at a place which is not the office of the treasurer of the municipality does not affect the validity of the bond, or charge the holder of such a bond, being negotiable and not yet matured, with notice of judicial proceedings between a previous holder and the municipality so as to work an estoppel.

This was an action at law to recover the amount of coupons cut from bonds not yet matured, issued by the plaintiff in error, a town in Illinois, and held by the defendant in error. Judgment for plaintiff. Defendant sued out this writ of error. The case is stated in the opinion of the court.

*Mr. Charles H. Patton* for plaintiff in error.

*Mr. T. C. Mather* for defendant in error.

Mr. Justice Bradley delivered the opinion of the court.

This is a suit brought by C. N. Jordan against the town of Enfield to recover the amount of twenty-two interest coupons for fifty dollars each, made by the town on the 1st of January, 1871, and payable in January and July, 1881, 1882, and 1883. The defendant pleaded non-assumpsit, and on the trial a jury was waived, and the cause was tried by the court, consisting of the circuit and district judges. A finding of the facts was made, and the judges being divided in opinion as to certain questions of law arising thereon, judgment was rendered in favor of the plaintiff, in accordance with the opinion of the presiding judge. The principal question of law was, whether an "incorporated town," as Enfield was, had power to make a donation of its bonds to the railroad company. Questions of estoppel were also raised, as hereafter noticed.

The facts found by the court, in accordance with an agreed statement presented by the parties, are substantially as follows:

1. That the town of Enfield was incorporated under an act of the General Assembly of the state of Illinois, approved March 15th, 1869. This act is set out in full, and is entitled "An act to extend the corporate powers of the town of Enfield." It is an ordinary town charter, making the town a corporation by the name and style of "The Town of Enfield." Its territorial limits were then prescribed, being one mile square, and the usual corporate powers were conferred. A town council, consisting of five trustees, together with a police magistrate, a treasurer, and a town constable, were directed to be elected annually, on the 1st Monday of May. The powers given to the town council were similar to those usually conferred upon municipal bodies; as, the power to levy and collect taxes; to appoint a clerk, supervisor of streets, and other officers; to appropriate moneys to pay the debts and expenses of the town; to make regulations for securing the general health; to provide a supply of water; to make side-walks, and to open, grade, pave, and repair streets; to establish markets; to regulate the public grounds; to organize a fire department; to regulate the police, &c.

The findings next set forth at large an act of assembly of Illinois, incorporating the Illinois Southeastern Railway Company, approved February 25th, 1867. This act authorized the company to construct a railroad from a point on the Illinois Central Railroad, by way of Fairfield in Wayne County, to the Ohio River. The route designated would naturally pass in the neighborhood of Enfield, and the railroad, when built, did pass through the town. The seventh section authorized counties through which the road might pass to donate to the company any sum not exceeding $100,000, and to give its bonds therefor. The ninth section authorized any town in any county under township organization to donate not to exceed $30,000; but such donation was payable only by taxation, no authority being given to issue bonds. This section related not to incorporated towns, but to townships forming the territorial subdivisions of counties. The eleventh section authorized "any incorporated city or town" through or by which the railroad might run to make donations not exceeding $10,000, on the same terms, propositions, conditions, and under the same restrictions, as provided for townships.

The findings next set forth an amendment to the railroad charter, approved February 24th, 1869, by the tenth section of which, authority was given to "any village, city, county, or township organized under the township organization law, or any other law of the state, along or near the route of the railway, . . . or anywise interested therein," to subscribe to the stock of the railroad company, or make donations to it to aid in the construction and equipment of its road, provided such subscription or donation was sanctioned by an election of the people. This section gave power to issue bonds for such subscriptions or donations; but towns are not included therein by name.

The court further found that, on the 1st of January, 1871, the town of Enfield issued and delivered to the officers of the Springfield and Illinois Southeastern Railway Company, a company formed by consolidation with the Illinois Southeastern Railway Company, the bonds and coupons now in controversy, copies of which are attached; that said bonds and coupons were

issued by said town by virtue of the power (if any) contained in the acts aforesaid, approved February 25, 1867, and February 24, 1869; that afterwards said bonds and coupons came to the plaintiff through mesne transfers from said Springfield and Illinois Railway Company; and that the bonds were registered in the state auditor's office.

The findings further set forth copies of the order of the town council of Enfield, made June 10th, 1870, appointing judges of election to be held in the town on the 11th of the same month, and a copy of the returns of the vote at said election for the purpose of determining whether the town would donate the sum of $7000 to the Springfield and Illinois Southeastern Railway Company, the result of which was — for donation 64 votes, against it, 1 vote; and that this was the only election held in relation to said donation.

The court further found that at the June term, 1880, of that court, judgment for the plaintiff against the defendant was rendered upon coupons then due, detached from the same bonds from which the coupons now sued on were taken. It was also admitted by the plaintiff that the Enfield town bond represented by Post in the case of *Welch et al.* v. *Post*, 99 Ill. 471, was one of the series of seven bonds in controversy in this suit, but as to which bond it was the plaintiff disclaimed any knowledge.

Upon these facts the judges who tried the cause have certified a difference of opinion upon the following questions, to wit:

1st. Whether the incorporated town of Enfield had power to vote and issue the bonds and coupons in controversy under any of the provisions of the acts above specified.

2dly. More particularly, whether said town had said power under the 10th section of the amendment of the railway company's charter, approved February 24, 1869.

3dly. Whether said town was not estopped from further defence by the litigation theretofore had between it and plaintiff.

4thly. In case there was power in the town under said laws to vote and issue said bonds and coupons, whether one of said

bonds, and the coupons thereto belonging, were void in the hands of plaintiff in this suit by reason of one Post having litigated it in the state courts of Illinois.

1. As to the first question, it is clear that the town derived no authority to issue the bonds from anything contained in its own charter. But, by the 11th section of the act incorporating the railway company, power is given to any incorporated city or town through or by which the railroad might run to make donations to the company, and to pay the same by taxes assessed by the county clerk at the request of the company. No authority, however, was given to issue bonds in payment · of such donations. The 10th section of the amending act, approved February 24, 1869, contains the only authority which can be invoked for that purpose. But that section does not mention towns by name. It declares "that any village, city, county, or township . . . along or near the route of said railway or its branches, or that are in anywise interested therein, may in their corporate capacity subscribe to the stock of said company, or make donations to said company, to aid in constructing and equipping said railway;" with a proviso for holding an election on the subject, and authorizing the issue of bonds in payment, "said bonds to be signed, in case of a village, by the chairman of the board of trustees thereof; in case of a city, by the mayor thereof," &c. The town of Enfield is not a township, nor a county, nor a city. If it is within the purview of the act it must be because it is a village. The question then arises, is the incorporated town of Enfield a village within the meaning of the act?

This question depends upon the use of words "town" and "village" in the laws of Illinois. The general and popular distinction between them in English speech will not carry us far towards a solution. The dictionaries tell us that the word "town" signifies any walled collection of houses. (Johnson.) But that is its antique meaning. By modern use, it is said to be applied to an undefined collection of houses, or habitations; also to the inhabitants; emphatically to the metropolis. (Richardson.) Again, a town is any collection of houses larger than a village; or any number of houses to which be-

longs a regular market, and which is not a city. (Johnson, Webster, Ogilvie.) The same authorities define a village as a small collection of houses in the country, less than a town. According to this distinction, the law, in giving power to "any village, city, county, or township" to make donations and issue bonds to the railroad company, confers the power upon bodies of higher and lower degrees of municipal organization than towns, and leaves them out. This is an incongruity which we can hardly suppose was intended. The Supreme Court of Illinois, in a recent decision against the power, to which we shall presently refer, is obliged to say, "Why incorporated towns were omitted in that act cannot now be known."

In seeking aid from collateral sources, we shall probably derive more light from the political use of the terms "town" and "village" in this country, than from general lexicography. In New England and New York, towns are the political units of territory, into which the county is subdivided, and answer, politically, to parishes and hundreds in England, but are vested with greater powers of local-government. In Delaware the counties are divided into hundreds, the words "town" and "village" being indiscriminately applied to collections of houses. In Maryland and most of the Southern States, the political unit of territory is the county, though this is sometimes divided into parishes and election districts for limited purposes. The word "town" is used in a broad sense to include all collections of houses from a city down to a village. Thus, in Virginia, by an act passed in 1778, on the death or removal of "any one of the trustees and directors of the several towns within this state, not incorporated," provision is made for filling the vacancy; by act of 1793, "electors of towns entitled to representation in the House of Delegates" are authorized to vote at their respective court-houses for representatives in Congress; by the Revised Code of 1819, "trustees of the respective unincorporated towns of this Commonwealth" are empowered to make by-laws to prohibit horse racing in the streets of the town; by the Revised Code of 1849, in the chapter entitled "Of Towns," the council and board of trus-

tees of any town, heretofore or hereafter established, may cause to be made a survey and plan of the town, showing each lot, public street, &c., to lay out, alter, improve, and light the streets, and to adopt various municipal regulations relating to public grounds, markets, health, nuisances, supply of water, fire departments, &c. Most of these towns were nothing but villages. The close connection between Virginia and Kentucky and the early settlement of Illinois renders this use of the word "town" in the mother state apposite to the question under consideration.

In New Jersey, Pennsylvania, Ohio, Indiana, Michigan, and Illinois, the subdivisions of a county, answering to the towns of New England and New York, are called townships, though the word "town" is also applied to them in Illinois. In these states the words "town" and "village" are indiscriminately applied to large collections of houses less than a city.

These results are gathered from an examination of the laws and constitutions of the states named; and we should have no hesitation in saying that, in Illinois, an incorporated town and an incorporated village were one and the same thing, were it not for the decision of the Supreme Court of that state to the contrary in the case of *Welch* v. *Post*, 99 Ill. 471, already alluded to, which decision was made in relation to the identical bonds in question in this suit.

That case arose upon a bill filed in the Circuit Court of White County by citizens, property owners, and tax-payers of the town of Enfield against the village and county collectors of taxes and the unknown holders of the bonds, to restrain the collection of taxes for their payment, on the ground that there was no authority of law to issue them. The bill prayed that the bonds might be declared null and void in whosesoever hands they might be. A decree was taken for confessed in April term, 1877; but, at the October term, 1879, one Post, of New York, presented a petition, stating that he was the owner of one of the bonds, and praying that the cause might be reinstated, which was done. The cause was then tried upon an agreed statement of the facts (much the same as in the present case), and the Circuit Court decided against the plaintiffs, and

dismissed the bill. This decree was reversed by the Supreme Court in June, 1881. The ground of this judgment, as stated in the opinion of the court, was, that the town of Enfield had no authority to issue the bonds; that no such authority was given in the charter of the town, because none was expressed, and the making of donations to railway corporations, and issuing interest-bearing bonds in payment thereof, is not among the usual or implied powers possessed by municipal corporations; that it was not given by the act of 1867, incorporating the railway company, because the donations authorized by that act to be made by incorporated cities or towns, were directed to be paid by taxation, and no authority was given to issue bonds; that it was not given by the amending act of February 24, 1869, because that act only gives the power to villages, cities, counties and townships, and does not mention incorporated towns, and the act cannot be extended by implication. The court says: "Keeping in mind, as must be done, [that] there is no implied authority in municipal corporations to make donations to railway companies, and to issue interest-bearing bonds in payment, it must appear there is express enabling legislation to that effect before municipal corporations can properly assume to exercise such extraordinary powers. No such authority is to be found anywhere, in any public or private law of this state, applicable to the town of Enfield, at the time that corporation undertook to and did issue the bond held and owned by the respondent, and having been issued without authority of law, such bond constitutes no valid obligation that can be enforced against the municipality."

Two justices, Dickey and Sheldon, dissented from this opinion, and adhered to an earlier ruling of the court made in 1877, in the case of *Martin* v. *The People*, 87 Ill. 524, in which it was adjudged that the terms "towns and villages" are used synonymously in the laws of Illinois. The proceeding in that case was instituted by the collector of Cook County, for the collection of certain special assessments levied by the town of Lake upon the real estate within its bounds, the mode of collection pursued being that pointed out in article IX of the act entitled "An act to provide for the incorporation of cities and

villages," approved April 10th, 1872, conferring upon all cities, towns, and villages which might adopt it (as all were authorized to do) municipal powers of a very comprehensive character. It was contended on the part of the defendants that, as to towns, the act was unconstitutional and void, because "towns" are not mentioned in the title, but only "cities" and "villages." The Supreme Court of Illinois, however, did not concur in this view, but held that an incorporated town and incorporated village, in the laws of that state, are one and the same thing. The court say : "The word 'town,' as found in our statutes, is not always used in the same sense. In the act relating to township organization, it is provided that counties adopting that system for the management of county affairs shall be divided 'into towns,' (sect. 5, page 1067, Rev. Stat. 1874,) consisting, generally, of a township according to the government surveys. These towns are a species of municipal incorporations, and constitute an integral part of the county, and are closely interwoven with the management of county affairs. In the statute found in Revised Statutes of 1845, page 111, the word 'town' is used in a very different sense. It there plainly means a village, or a small collection of residences; and by that act it is provided that the inhabitants of any such town may, under certain circumstances, 'become incorporated for the better regulation of their internal police,' under the management of a board of trustees, with capacity to sue and be sued, to keep a record of their proceedings, and with power to make by-laws and ordinances, to prevent nuisances, to prohibit gambling and other disorderly conduct, to prevent fast driving and indecent exhibitions, to license public shows, to regulate markets, sink wells, to keep open and repair streets, to protect the town from fires, to levy and collect taxes, to enforce their ordinances, &c. Such an organization, in our statutes, was formerly always called an 'incorporated town,' but in our later statutes they are sometimes called villages, and their trustees are called village trustees. An examination of the special charter of the town of Lake, (4th vol. Special Laws of 1869, page 324,) shows it to be a municipal corporation of the latter character, and, in so far as its organization under that charter is

concerned, it is merely an incorporated town, or, in other words, 'an incorporated village.'. Before that charter was enacted, the town of Lake was merely a municipal corporation under the laws relating to township organization. By this charter, the inhabitants of that town took another form of corporate existence, and became, also, in contemplation of law, what, in the Revised Statutes of 1874, is known as a village." The court then, after enumerating the powers conferred by the town charter, add: "All the powers are of the kind usually conferred upon cities or villages, and of the character conferred upon cities or villages by the general law of 1872, of which. this article 9 is a part. Before the adoption of our present Constitution, many special charters, conferring like powers, were granted by the General Assembly, and in most cases such corporations are called towns, but in some cases they are called villages; but the character and nature of these corporations, whether called, in their charters, towns or villages, were in all cases substantially the same." After referring to a number of these charters, the titles of which ran, "An act to incorporate the village of A., or B.," but in the body of which the several communities were called villages and towns indiscriminately, the court concludes as follows: "We, therefore, hold that the town of Lake was, and is, a village in the sense in which that word is used in § 168 of the general act of 1872 relating to. cities and villages; that it, therefore, is one of the municipal incorporations which, by that section, are authorized to avail themselves of the provisions of article 9 of that act as an amendment to their charters."

We have quoted more fully from the judgment in this case, because it is not only directly in point, but it shows historically the use of the terms town and village in the legislation of Illinois. Its bearing on the present case is enhanced by the fact that the towns of Lake and Enfield were incorporated at the same session of the legislature, and invested with like powers and form of organization.

Both of the cases to which we have referred arose after the bonds and coupons now in controversy were issued, and neither of them can control our decision upon the rights of the parties

here, any further than as they address themselves to our judgment upon the true construction of the law; and we feel compelled to say that we. regard the views expressed in the case of *Martin* v. *The People* as the most sound and convincing of the two. It seems to us that the legislature of Illinois, in the act for the incorporation of cities and villages, intended to avoid hereafter the use of the ambiguous word "town," as applied to the smaller class of incorporated municipalities, and to designate them by the single term of " village." This conclusion is, on the whole, so obvious that we do not hesitate to adopt it, and to hold that the town of Enfield is a village within the meaning of the amending act of February 24th, 1869. We may add, as a strong corroboration of what has been said, that in the 9th section of that act the word "town" is used indiscriminately with the word "village." The language is: "It shall be lawful for the incorporate authorities of any *incorporate city or village* through which said railway shall be located to donate or lease to said railway company, as a right of way, the right to lay a single or double track through said *city or incorporated village*, or any portion of the same, or any street or highway, that the said railway company shall elect for that purpose, except at the option of the said railway company and corporate authorities of *such towns or cities.*"

An additional point, however, is made in relation to the authority of the town to issue the bonds under consideration. Supposing that such authority is found in the acts referred to, it is still contended that it was abrogated by the constitution of the state adopted on the 2d day of July, 1870. By a section of that constitution it is declared that "no county, city, town, township, or other municipality, shall ever become subscriber to the capital stock of any railroad or private corporation, or make donation to or loan its credit in aid of such corporation.: *Provided, however,* That the adoption of this article shall not be construed as affecting the right of such municipality to make such subscriptions where the same have been authorized, under existing laws, by a vote of the people of such municipalities prior to such adoption." It is urged that whilst the proviso of this section saves the power to make

subscriptions to the capital stock of private corporations, it does not save the power to make donations to them. We did so decide in the case of *Town of Concord* v. *Portsmouth Savings Bank*, 92 U. S. 625 ; but in the subsequent case of *Fairfield* v. *County of Gallatin*, 100 U. S. 47, that decision was overruled in deference to several decisions of the Supreme Court of Illinois to the effect that donations as well as subscriptions were within the meaning of the proviso. The authorities are collected in the latter case, and need not be repeated here. We held, as we had often held before, that this court will follow the construction which has been uniformly given by the highest court of a state to its constitution and laws.

To the first and second questions, therefore, our answer is, that the town of Enfield had power under the 10th section of the amending act approved February 24th, 1869, to vote and issue the bonds and coupons in controversy.

The third question is, whether the town was not estopped from further defence by the previous litigation in this [the circuit] court upon the pleadings and facts stipulated and judgment rendered therein? The stipulation and finding on which this question is raised is as follows, to wit: "That at the June term, A.D. 1880, of this court judgment for the plaintiff against the defendant herein was rendered upon coupons then due, detached from the same bonds from which the coupons in evidence in this suit were taken." The coupons on which said former judgment was rendered were different coupons from those involved in the present suit. This suit, therefore, was brought upon a different cause of action from that upon which the former suit was brought. Whether the same issues were raised and passed upon in that suit which are raised in this, the stipulation does not inform us. The question is too general in its terms to admit of a precise answer. If the defendant sought to set up in this suit some new defence, which was not made in the former one, and not necessarily decided therein, it should have been allowed to do so, under the ruling of this court in *Cromwell* v. *Sac County*, 94 U. S. 351, 354. But we are left in entire ignorance on the subject. As no

proper answer can be given to a question stated in such broad and indefinite terms, which admits of one answer under one set of circumstances, and of a different answer under another, we must necessarily pass it by as immaterial to the decision of the case in this court.

The fourth and last question propounded by the judges below is, whether one of the bonds and the coupons thereto belonging are void in the hands of the plaintiff in this suit by reason of one Post having litigated it in the state courts of Illinois? The finding on which this question is based is as follows, to wit: "It is admitted by the plaintiff in this suit that the Enfield town bond represented by Post in the case of *Welch et al.* v. *Post*, 99 Ill. 471, was one of the series of seven bonds now in controversy in this suit; but in making said admission plaintiff disclaims any knowledge of which one it was, or any connection with said suit." It is rather a singular proceeding to refer this court to a volume of reports to eke out the record on which it is to pass judgment. The reported case is not even printed in the record before us, and we do not feel called upon to give it a very critical examination in reference to the point now raised, and might well refuse to consider it at all. It consists merely of the opinion of the court already referred to and commented on. The nature and object of the suit and the principal proceedings had therein have already been stated. For the purpose in hand, it is sufficient to remark that the bond held by Post was not matured, and will not mature till the year 1891, and, therefore, a decree against Post has no binding effect on a subsequent holder of the bond purchasing the same before maturity and without notice. To have made the decree effectual against the bond itself, Post should have been required to produce it in court, in order that it might have been cancelled. If he parted with the bond pending suit, it would make no difference. The subject of notice by *lis pendens* in relation to negotiable securities was considered by this court in the cases of *Warren County* v. *Marcy*, 97 U. S. 96, and *Carroll County* v. *Smith*, 111 U. S. 556, and needs no further discussion. The general rule announced in those cases is, that the pendency of a suit relating

to the validity of negotiable paper not yet due is not constructive notice to subsequent holders thereof before maturity. This general rule cannot be changed by state laws or decisions so as to affect the rights of persons not residing and not being within the state, any more than publication of suit can be made constructive service of process upon such persons. Rights to real property and personal chattels within the jurisdiction of the court, and subject to its power, may be affected by *lis-pendens*, but not those acquired by the transfer of negotiable securities or by the sale of articles in market overt in the usual course of trade. See *Brooklyn* v. *Insurance Co.*, 99 U. S. 362; *Empire* v. *Darlington*, 101 U. S. 87; *Pana* v. *Bowler*, 107 U. S. 529, 545.

But it is contended by the plaintiff in error that the bonds on their face show an illegality as to the place of payment sufficient to put a purchaser upon inquiry, and, therefore, to subject him to notice of the proceedings by which the bond held by Post was declared void. This argument is based upon the fact that the bonds are payable not at the office of the treasurer of the town of Enfield, but "at the First National Bank of Shawneetown, Illinois," the principal town in the adjoining county, about thirty miles distant, and the terminus of the railroad passing through Enfield. As the statute which gave the authority to issue the bonds is silent as to the place of their payment, we are at a loss to see how the place named therein can have the effect supposed. Counsel admit in argument that it does not render the bonds void, but insist that the town had no power to make them payable at any other place than the office of the town treasurer. For this they cite *The People on the relation of the Peoria and Oquawka Railroad Company* v. *The County of Tazewell and its Supervisors*, 22 Ill. 147; *City of Pekin* v. *Reynolds*, 31 Ill. 529; and *Sherlock et al.* v. *The Village of Winnetka*, 68 Ill. 530. In these cases, it is true, the Supreme Court of Illinois held that a municipal corporation cannot lawfully make its obligations payable at any other place than the office of its treasurer; but the court also held that the making of them payable elsewhere does not affect their validity. The case last cited was a bill by

tax-payers to enjoin the collection of taxes levied to pay interest on certain bonds of the village, the validity of which was questioned. They had been issued to pay for erecting a building for educational purposes, which the court held the village had no power to erect. The question of the place of payment of the bonds only came up incidentally, as one of the arguments of counsel used against their payment. On this point the court say: "The objection that the bonds are illegally made payable at a bank in Chicago does not invalidate them, as was held in *Johnson* v. *Stark County*, 24 Ill. 75. The agreement to pay at that place is void, but the balance of the coupons and bonds are not rendered invalid for that reason. In paying the interest, the treasurer should not obey that agreement in the bond, but pay it at the village treasury. If he were to deposit the money in the bank for the purpose, and it were to break, or the money should otherwise be lost, he and his sureties would no doubt be liable for the loss growing out of his illegal act in placing the money in a place unauthorized by law." The court did not regard this as a ground for enjoining the collection of taxes; but enjoined their collection upon other grounds.

Now, giving to these cases all the effect due to them, we do not see how the fact that the bonds and coupons of the town of Enfield were made payable at Shawneetown, can prejudice a *bona fide* holder thereof, or charge him with notice of prior proceedings against other parties who once held them. The most that can be said is, that a person purchasing the bonds may be bound to know that the place named for payment therein is not binding on the county, and that, though made payable elsewhere, their legal place of payment is at the office of the treasurer of Enfield. The question whether a municipal corporation, authorized to issue bonds, may, or may not, make them payable at a place other than its own treasury, (there being no statutory direction on the subject,) is one of general jurisprudence, in reference to which the courts of Illinois take a particular view. Other courts take a different view. There is nothing in the constitution of the municipal bodies of that state, so far as this particular power is concerned,

different from that of similar bodies in other states. When the bonds of an Illinois municipality are offered for sale in the market, and on their face are made payable at a different place from the treasury of such municipality, even though it be conceded that a purchaser is bound to know that, by the jurisprudence of Illinois, the bond is legally payable at such treasury, that is all he is bound to know. The same jurisprudence informs him that the naming of a different place for payment does not affect their validity, nor the obligation of the municipality to pay them. At all events, we are of opinion that the place of payment named in the bond which was formerly in the hands of Post, did not affect the present holder with notice of the proceedings in which Post was a party. Those proceedings are an estoppel against Post, even though, in our judgment, the decision was based on an erroneous view of the law; and they would be an estoppel against Jordan if he had notice of them when he took the bond. But there is no evidence that he had any such notice, and we think that the fact of the bond being payable at a place where the town of Enfield had no authority to make it payable — a fact which it is admitted does not affect its validity — was not sufficient to put Jordan on inquiry. Though made payable in Shawneetown, it is legally payable at Enfield, and is as valid and binding on the town as if it were in terms made payable there.

The answer to the fourth question, therefore, is, that one of the bonds, and the coupons thereto belonging, are not void in the hands of the plaintiff by reason of Post having litigated the bond in the state courts of Illinois.

*The judgment of the Circuit Court is affirmed.*