### VILLAGE OF OQUAWKA v. GRAVES.

(Circuit Court of Appeals, Seventh Circuit. October 7, 1897.)

#### No. 336.

1. MUNICIPAL CORPORATIONS—REFUNDING BONDS.
   Under the Illinois act of February 13, 1865, authorizing "counties or cities," under certain circumstances, to issue new bonds to satisfy or to take up prior indebtedness, the cities referred to are those already incorporated as such when the act took effect; and it does not cover towns or villages, though afterwards incorporated as cities.

2. SAME.
   No power exists as of course in a municipal corporation to issue renewal or refunding negotiable bonds merely because the corporation is indebted.

In Error to the Circuit Court of the United States for the Southern Division of the Northern District of Illinois.

This was an action at law by Luther R. Graves against the village of Oquawka to recover the principal and interest of certain refunding bonds issued by the city. In the circuit court a judgment was entered for plaintiff, and the defendant has brought the case to this court on writ of error.

I. M. Kirkpatrick and Raus Cooper, for plaintiff in error.
O. J. Bailey and James W. Sedwick, for defendant in error.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

SHOWALTER, Circuit Judge. Plaintiff in error seeks the reversal of a judgment rendered against it and in favor of defendant in error on April 23, 1896, for $25,534.55, the aggregate of principal and interest thereon from July 1, 1891, of certain bonds made by the city of Oquawka. The declaration filed October 6, 1893, contained one special count on all the bonds and the common counts; but with the declaration was a notice in the words following:

"Notice: The defendant is hereby notified that the sole causes of the action herein sued on, and of which evidence will be offered, are the twenty-three bonds mentioned in the special count, and that they are fac similes of each other except the amounts and bond numbers, the amounts and bond numbers being as in said special count specified."

There was also filed with the declaration a copy of one of the bonds in words following:

"No. 1.                                                                $1,000..

"United States of America.

"State of Illinois.

"City of Oquawka.

"Twenty-Year Six per Cent. Bond.

"Issued under an act of the general assembly of the state of Illinois, entitled 'An act relative to county and city debts, and to provide for payment thereof by taxation in such counties and cities,' approved February 13, 1865.

"The city of Oquawka, in the state of Illinois, twenty years after date, will pay the bearer hereof one thousand dollars ($1,000) and six per cent. per annum thereon, payable annually on the first day of July in each year at the agency of the treasurer of the state of Illinois, in the city of New York, on presentation and surrender of the annexed coupons as they severally become due.

"In pursuance of said act, the mayor of said city of Oquawka has hereto set his hand, and caused the seal of said city to be hereto affixed, and this bond to be countersigned by the clerk of said city of Oquawka, Illinois, this first day of July, A. D. 1871.                                 S. S. Phelps,

"City of Oquawka.                                       Mayor.

"[Seal.]                                        E. H. N. Patterson,

"A. D. 18—.                                           City Clerk."

On written stipulation, the cause was heard without a jury, and a finding was made in words following:

"(1) Prior to 1871 the defendant was organized as a town, under and by virtue of the laws of the state of Illinois, and contracted a bonded indebtedness of some $60,000.

"(2) That in the fall of 1870 the Merchants' National Bank of St. Louis, holding a portion of said bonds, brought suit against the town upon said bonds held by it.

"(3) In January, 1871, the president and board of trustees of said town were authorized to negotiate a settlement of the bonded indebtedness of the town held by the Merchants' National Bank of St. Louis, on the basis of fifty cents on the dollar. In pursuance of this authority, on or about the 30th of January, 1871, an agreement was entered into between said bank and the agent of the town, to the effect that the town would refund the indebtedness by issuing and delivering to the bank the bonds of said town, 'or of the corporation, if it is thought best that said town should become a city to give validity and value to said bonds,' at the rate of fifty cents on the dollar; such bonds to run for twenty years, with coupons attached for the annual interest at 6 per cent. per annum, the whole to bear date July 1, 1871.

"(4) That on the 30th day of January, 1871, at a meeting of the president and board of trustees of said town, said agreement was ratified and spread upon the records of the town, and at the same meeting an election was ordered to be held on the 21st day of February, 1871, to vote for or against city organization.

"(5) The general laws then in force of the state of Illinois authorized towns having a population of 1,500 inhabitants to incorporate as cities upon an affirmative vote of a majority of its inhabitants at an election to be held therefor.

"(6) That on the 21st day of February, 1871, at a meeting of the president and board of trustees of said town, the election returns were duly canvassed, and the election was declared to have been carried in favor of city organization, and that such city organization composed the same territorial limits as the town of Oquawka.

"(7) That no census or computation of the inhabitants of the town was had, made, or attempted after the taking of the census under the laws of the United States in 1870, and prior to the election to incorporate as a city, and that the census of the United States of 1870, completed September 10th of that year, showed the population to be 1,371.

"(8) After said election, ordinances were passed dividing the city into wards, providing for the election of aldermen, mayor, and other city officers;

and on the 14th day of March, 1871, an election for mayor and aldermen was held, and said officers elected.

"(9) At a meeting of the city council held on May 17, 1871, the mayor and city clerk were instructed to issue to the holders of bonds of the town of Oquawka, at the rate of fifty cents on each dollar of such bonds, bonds of the city of Oquawka, to be dated July 1, 1871, due twenty years after date, bearing interest at the rate of six per cent. per annum, payable annually on the first day of July in each year, said bonds to show upon their face that they were issued under an act of the general assembly of the state of Illinois, entitled 'An act relating to county and city debts, and to provide for the payment thereof by taxation in counties and cities,' approved February 13, 1865; said bonds and coupons to be signed by the mayor and city clerk, and the bonds to bear the seal of said city, and have printed upon the back thereof the act of the general assembly above referred to. The mayor was also instructed to take up the bonds of the town of Oquawka to the amount of $23,000, held by the Merchants' National Bank of St. Louis, and exchange in lieu thereof bonds of the city of Oquawka in conformity with an existing contract between the town of Oquawka and said bank.

"(10) This action was brought by the plaintiff upon twenty-three bonds of said city of Oquawka, as above stated, and purchased by the plaintiff for value before maturity, which said bonds were signed by the mayor and city clerk of said city of Oquawka, with the seal of the city attached, and had printed on their face that' they were issued under an act of the general assembly of the state of Illinois, entitled 'An act relative to county and city debts, and to provide for the payment thereof by taxation in such counties and cities,' approved February 13, 1865, and that said act is also printed upon the backs of said bonds. Said bonds are dated July 1, 1871, payable twenty years thereafter, with interest at the rate of six per cent. per annum, payable annually on the first day of July in each year. Said bonds were duly registered in the auditor's office of the state of Illinois.

"(11) Said city of Oquawka duly performed all the functions of a city, passed ordinances for its government, collected taxes for the payment of interest on said bonds and for other purposes, and paid said interest as it became due, without any protest, until August, 1880, when said city was organized as a village under the general laws of the state of Illinois then in force. Said village comprised the same territorial limits as the said city. Said village continued to collect taxes, and paid the interest on said bonds, up to and until the maturity of said bonds, July 1, 1891, without any protest. At the maturity of the bonds, it refused to pay the principal.

"(12) Bonds of the plaintiff, numbered, respectively, 1, 2, 3, 4, 5, 6, 15, 16, 17, 18, 19, 20, 21, 22, and 24, were delivered by the city of Oquawka to the Merchants' National Bank of St. Louis, in settlement of indebtedness due it; and bonds numbered, respectively, 25, 26, 27, 28, 29, 30, 32, and 33, were delivered to various other parties by said city in settlement of indebtedness due them."

On February 13, 1865, there was enacted by the Illinois legislature an act entitled "An act relative to county and city debts, and to provide for the payment thereof by taxation in such counties and cities." The first section was as follows:

"Section 1. Be it enacted by the people of the state of Illinois, represented in the general assembly, that in all cases where counties or cities have heretofore, under any law of this state, issued bonds or securities for money on account of any subscription to the capital stock of any railroad company, or on account of, or in aid of any public improvement, and the same remain outstanding, or any debt arising thereout remains unpaid, the board of supervisors or county court of such county, and the city council or municipal authority of such city, as the case may be, having issued such bonds or securities, may, upon due surrender of any such bonds or securities, or cancellation of such debt, issue in place thereof to the holder or owner, new bonds, in such form, for such amount, upon such time, and drawing such interest as may be agreed upon with the holder or owner; provided, such new bonds shall not be for a greater sum than the principal and accrued or earned interest unpaid of

the bonds or debts in place of which they shall be given, nor bear a greater rate of interest than six per cent. per annum, payable on the first day of July in each year; and such bonds shall show on their face that they are issued under this act, and, if so agreed, may provide for payment of five per cent. of the principal thereof, annually, until fully paid."

Sections 2 to 8, inclusive, concerned the registration of such new bonds, and the method of taxation and procedure for the payment of the interest, and eventually the principal. Section 9 was in words following:

"Sec. 9. If it shall be deemed advisable, any such county or city may issue such new bonds for the purpose alone of satisfying or taking up their respective bonds or debts."

On March 26, 1872, the Illinois legislature enacted another statute, entitled "An act to enable counties, cities, townships, school districts and other municipal corporations to take up and cancel outstanding bonds and other evidences of indebtedness and fund the same." Section 1 of this act read:

"That in all cases where any county, city, township, school-district or other municipal corporation has issued bonds or other evidences of indebtedness for money on account of any subscription to the capital stock of any railroad company, or on account of, or in aid of any public improvement, or for any other purposes which are now binding or subsisting legal obligations against any such county, city, township, school-district, or other municipal corporation and remaining outstanding and which were properly authorized by law, the proper authorities of any such county, city, township, school-district or other municipal corporation may upon the surrender of any such bonds, or other evidences of indebtedness, or any number thereof, issue in place or in lieu thereof to the holders or owners of the same, new bonds or other evidences of indebtedness," etc.

The emergency clause of this act declared that:

"Whereas some counties, cities, townships and other municipal corporations in this state have outstanding bond and other evidences of indebtedness that will soon fall due and are without any remedy for renewing or funding the same, therefore this act shall be in full force from and after its passage."

The act of 1872 was amended April 14, 1875. Section 1 was made to commence, "That in all cases where any county, city, town, township, school districts or other municipal corporations," etc.; going on as in the original section 1, but putting in limitations as to interest and upon the increase of the aggregate indebtedness.

These statutes are discussed by the supreme court of Illinois in the case of People v. Lippincott, 81 Ill. 194. That case was a mandamus proceeding to compel the auditor of public accounts to register a certain new bond issued by Macoupin county, in lieu of a prior indebtedness incurred before March 26, 1872, and after February 13, 1865. It was insisted that the auditor was bound to so register this bond by force of the act of 1865; but the supreme court held that the act of 1865 was limited in its application to debts which had been created prior to February 13, 1865. The court said in the course of the opinion: "The act of 1865, with its provision for registration, etc., applies to only a comparatively small class of bonds,—those issued by counties and cities prior to February 13, 1865." By reference to the terms of section 1 of the act of 1865, it will be seen that

that act concerns only certain cities, namely, those which had already been incorporated as such when that act took effect. The point can hardly admit of discussion. The debt of a town or village was not within the terms of that act. Moreover, this is plainly the understanding of the courts and of the legislature of Illinois, as will appear from the case last referred to. The words of section 9, "any such county or city," cannot mean any such county or any city. The word "such" identifies the municipal corporation, whether county or city, as described in section 1. The city of Oquawka was not in existence until 1871. The act of February 13, 1865, was not authority, therefore, for issuing the bonds here sued on. Ogden v. Glidden, 9 Wis. 50; U. S. v. Gooding, 12 Wheat. 476; Kelley v. Milan, 127 U. S. 139, 8 Sup. Ct. 1101. It may be questionable whether under Illinois law there be any distinction between a town and a village, but certainly a town or village in Illinois is not a city. See Welch v. Post, 99 Ill. 471, and Enfield v. Jordan, 119 U. S. 680, 7 Sup. Ct. 358. Apart from the act of 1865, there was no statute of Illinois, so far as indicated to this court, which authorized, expressly or by necessary implication, negotiable bonds—that is to say, bonds intended to pass as commercial paper from hand to hand on the market, such as those here sued on—to be issued by the city of Oquawka in place of evidences of indebtedness previously existing. Nor does the power to issue renewal or refunding negotiable bonds exist as of course, and merely because a municipal corporation is indebted.

In Merrill v. Monticello, 138 U. S. 673, 11 Sup. Ct. 441, the town of Monticello, in 1869, had made a valid issue of bonds which were sold upon the market. In 1878, when this issue of bonds was about to mature, the authorities of the town, in order to obtain money for payment of the same, made another issue of bonds payable in 10 years. In a suit by a purchaser and holder of these latter bonds they were held illegal and void. Mr. Justice Lamar said:

"The town had no power to pay off these bonds in this way, namely, by the issue of new bonds, or it could perpetuate a debt forever. * * * When bonds are once issued for a lawful purpose, the town is functus officio as to that matter. To argue that the old bonds are a debt for school purposes, which may be liquidated by new bonds, is a refinement of construction which the sound sense of the law rejects."

In the case of Brenham v. Bank, 144 U. S. 173, 12 Sup. Ct. 559, the charter of the city of Brenham provided that "the said council shall have the power and authority to borrow for general purposes not exceeding fifteen thousand dollars on the credit of said city"; also, that the "bonds of the corporation of the city of Brenham shall not be subject to tax under this act." The supreme court of the United States ruled that negotiable bonds issued and sold by the city of Brenham for cash were invalid and void, as being in excess of any power or authority vested in the corporation; that even the express power to borrow money did not authorize the issue of bonds to circulate as commercial paper.

In County of Hardin v. McFarlan, 82 Ill. 139, the supreme court of Illinois ruled that certain bonds issued in 1869, in consideration of the surrender of certain evidences of indebtedness in the shape of

county orders, were void, there being at the time no legislative authority for the issue of the bonds.    In that case the supreme court said:

"To enable counties to fund their indebtedness, the legislature passed an act approved April 14, 1875.  The question and policy is left by that act to a vote of the majority of the legal voters of the county.  The implication would be that prior to the passage of this law counties had not the power exercised in this case."

In the case at bar it appears that there was a "bonded indebtedness of some $60,000" against the town of Oquawka.    This indebtedness was to be taken up and canceled at the rate of 50 cents on the dollar in part by the bonds here sued on.    If there were no authority in the municipal corporation to issue bonds such as those here sued on, we do not see how the mere measure of convenience or advantage to the town can help the matter.    The supreme court of Illinois in the case last cited said:

"It is not a question of advantage which the taxpayers may derive from the exercise of the power claimed, but it is a question of the right to exercise the power."

In Merrill v. Monticello and in Brenham v. Bank the municipal corporation itself sold upon the market, and received cash for the bonds sued on.    It does not appear, however, that it would have made any difference if the city had received some other consideration, as the cancellation, for instance, of a prior indebtedness.    The point against the municipal authority to issue such bonds is that they have the qualities of negotiable paper.    They are not mere evidences of indebtedness, and nothing more.    Police Jury v. Britton, 15 Wall. 566.

It is strongly insisted by counsel for plaintiff in error that the city of Oquawka was not lawfully incorporated, and that such illegality may be here asserted against the validity of the bonds.    Possibly, Shapleigh v. City of San Angelo, 167 U. S. 646, 17 Sup. Ct. 957, is against this contention.    At all events, and for reasons before given, the judgment is reversed, and the cause remanded, with the direction that judgment for plaintiff in error be entered in the circuit court.