JAMES PHILLIPS

v.

THE TOWN OF SCALES MOUND.

|195   353|
|197   ¹452|

*Opinion filed February 21, 1902—Rehearing denied April 4, 1902.*

1. CEMETERIES—*a town may condemn land for addition to cemetery.* In section 5 of the act concerning cemeteries, providing that "any city, village or township" may establish and maintain cemeteries, and may acquire lands therefor by condemnation or otherwise, the word "township" is used in the sense of the word "town," and hence a town may condemn land for an addition to its cemetery.

2. SAME—*petition to condemn land need not aver that the petitioner is organized under township organization.* A petition by a town to condemn land for an addition to its cemetery need not aver that the county has adopted township organization and that the petitioner was organized under that act, since the Supreme Court will take judicial notice of such facts.

3. SAME—*when petition sufficiently shows that cemetery is for public use.* A petition, filed in strict accordance with the statute, by a town for the purpose of condemning land for an addition to its cemetery, sufficiently shows that the cemetery is for the use of the public which avers that the petitioner has acquired and holds its cemetery for the use of its inhabitants, and that the additional ground is needed to provide suitable burying ground for families and individuals resident in the town.

4. EMINENT DOMAIN—*when condemnation verdict will stand, on appeal.* A condemnation verdict will not be set aside where the evidence is conflicting, even though it may be against the weight of evidence, unless it is apparent that the jury have been actuated by passion or prejudice.

5. SAME—*what property would sell for under extraordinary circumstances is not the measure of damages.* In estimating damages in condemnation the jury should not consider the price for which the property would sell under extraordinary circumstances, but only its fair cash value if sold in the market, under ordinary circumstances, for cash, and not on time, and assuming that the owner is willing to sell and the purchaser willing to buy.

6. SAME—*jury not bound to suppose that present use of property will be changed.* While it is proper for witnesses, in making their estimate of damages in condemnation, to consider any use to which they believe, from the evidence, the property may be profitably appropriated, yet the jury are not bound to base their verdict upon the supposition that the property will be appropriated to a use other than that to which it is already devoted.

195—23

7. SAME—*just compensation defined.*    Just compensation means the payment of such sum of money as will make the defendant whole, so that on receipt by him of the compensation and damages he will not be poorer because his property is taken or damaged.

8. VERDICT—*affidavits as to statements of jurors not receivable to impeach verdict.*    Affidavits as to statements of jurors made after the trial will not be received to impeach the verdict.

APPEAL from the Circuit Court of JoDaviess county; the Hon. JAMES S. BAUME, Judge, presiding.

This is a petition, filed on May 16, 1901, in the circuit court of JoDaviess county by the appellee, the town of Scales Mound in said county against the appellant, James Phillips, to condemn two acres of his land in said town for cemetery purposes. The appellant filed a motion to dismiss the petition upon certain grounds, which motion was overruled. A jury was empaneled, and awarded appellant the sum of $160.00 as compensation for the property, taken and damaged by the acquiring by the petitioners of the two-acre tract described in the petition. A motion for new trial was overruled, and the court ordered and adjudged that the petitioner, the town of Scales Mound, should enter upon the property described in the petition, and upon the use of the same upon payment of the compensation and damages ascertained as aforesaid, to-wit: the sum of $160.00 within thirty days from the date of the order, payment of compensation to be made to the appellant, or to the county treasurer of JoDaviess county for the use of appellant; and that said county treasurer should, on demand, pay the same to the appellant, taking receipt therefor. Appellant took exception to the entry of this order and judgment. The present appeal is prosecuted from the judgment of condemnation, so entered by the circuit court.

The petition represents that the town of Scales Mound is a town duly organized and existing as one of the component towns of the county of JoDaviess in conformity with the general laws of Illinois; that, as such town, it

has acquired and holds for the use of its inhabitants two acres of ground in the south-west corner of the east half of the north-east quarter of section 27, township 29 north range 2, east of the fourth principal meridian, which said two acres are dedicated to, and used for, cemetery purposes, and are laid out into lots of convenient size for burial purposes; that one and one-half of said two acres has been dedicated to and used for cemetery purposes since the year 1860; and that the other half acre of said two acres has been dedicated to and used for cemetery purposes since the year 1880; that, in order to maintain the cemetery and furnish therein suitable burying ground for families and individuals resident in said town, it has become necessary to enlarge the said cemetery and to acquire additional land therefor; that the electors present at the annual town meeting of the town on Tuesday, April 2, 1901, adopted the following resolution, to-wit:

"*Resolved*, That, as it has become necessary to enlarge the cemetery of the town of Scales Mound, the town shall acquire by purchase or condemnation two acres of land, adjoining to and on the east side of its cemetery in the south-west corner of the east half of section twenty-seven (27) in said town; that the supervisor of the town is authorized and directed to proceed in the name of the town and carry out this resolution; that he purchase said two acres of land, if it can be done at a reasonable price; and, if that cannot be done, that he employ counsel, institute legal proceedings and take all necessary steps to acquire the same by condemnation."

The petition further represents, after describing the two acres of land to be acquired, that the supervisor has been unable to purchase the two acres so described at a reasonable price; that the compensation to be paid for the property, sought to be appropriated for said purpose, cannot be agreed upon by the parties interested; that, in pursuance of the resolution, the supervisor has employed counsel, whose names are subscribed to the petition, to institute legal proceedings to acquire the premises by condemnation; that the premises are sought for the pur-

pose of enlarging the cemetery of the town as set out in the resolution; that the only person, interested in the property as owner or otherwise, appearing of record, is James Phillips, a resident of the town of Scales Mound, whose title is believed to be perfect. The petition prays the court to cause a compensation to be paid the owner of the premises, to be assessed according to law and to the statute in such case made and provided.

J. C. McKENZIE, and W. SPENSLEY, for appellant.

D. & T. J. & J. M. SHEEAN, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—It is claimed, on the part of appellant, that the court below erred in refusing to dismiss the petition upon the alleged ground that the town of Scales Mound had no authority or right to acquire additional ground for its cemetery by condemnation.

Section 5 of chapter 21 of the Revised Statutes in regard to cemeteries, provides: "That any city, village or township in this State may establish and maintain cemeteries, within and without its corporate limits, and acquire lands therefor by condemnation or otherwise, and may lay out lots of convenient size for families; and may sell lots for family burying ground, or to individuals for burial purposes." Section 6 of the act in regard to cemeteries provides: "That any two or more cities, villages or townships in this State may jointly unite in establishing and maintaining cemeteries within and without the corporate limits of either, and acquire lands therefor in common, by purchase, condemnation or otherwise, and may lay out lots of convenient size for families, and may sell lots for family burying ground or to individuals for burial purposes." (1 Starr & Curt. Ann. Stat.—2d ed.— p. 551).

The contention of the appellant is, that section 5, as above quoted, gives "any city, village or township" authority to establish and maintain cemeteries within its corporate limits, and to acquire lands therefor by condemnation, but that it does not give such authority to towns; and the point made is, that the appellee here is a town, and not a township.

Section 5 of the act in regard to Township Organization provides, that "the county board shall * * * appoint three commissioners, residents of the county, to divide the county into towns." Section 6 provides, that "the commissioners so appointed shall proceed to divide such county into towns, making them conform to the townships according to government surveys." Section 7 provides, that "towns shall be named in accordance with the express wish of the inhabitants of the town," etc. (3 Starr & Curt. Ann. Stat.—2d ed.—p. 3916).

The word, "township," is not used in the act in regard to cemeteries as being merely descriptive of a government subdivision of land. The act in regard to cemeteries authorizes a township to acquire lands by condemnation. A mere governmental, geographical subdivision of land, not organized in a corporate or *quasi* corporate capacity, cannot institute or prosecute a condemnation proceeding. Consequently, if the word, "township," as used in the act, confers no authority upon one of the component subdivisions of a county, called into being by the act on township organization, as above quoted, then the word, "township," is meaningless as used in the act in regard to cemeteries. It was evidently the intention of the Township Organization act to create townships, whose corporate names should be towns, and that they should sue and be sued in and by such names. We are of the opinion, that the legislature intended to use the words "town" and "township" synonymously in referring to the political divisions of the county.

It was not necessary to aver in the petition, that JoDaviess county had adopted township organization, or that the town of Scales Mound was organized under the act, because this court takes judicial notice of the adoption of township organization by any county in the State. (*County of Rock Island* v. *Steele*, 31 Ill. 543.) "This court will take judicial notice of the county, in which an incorporated town is situated, and of the fact whether such county is under township organization." (*People* v. *Suppiger*, 103 Ill. 434; *Bruner* v. *Madison County*, 111 id. 11; *Jones* v. *Town of Lake View*, 151 id. 663).

In *Enfield* v. *Jordan*, 119 U. S. 686, the Supreme Court of the United States said: "In New Jersey, Pennsylvania, Ohio, Indiana, Michigan and Illinois the subdivisions of a county, answering to the towns of New England and New York, are called townships, though the word 'town' is also applied to them in Illinois."

In *People ex rel.* v. *Village of Harvey*, 142 Ill. 573, we said: "Counsel for appellant admit that the town or township of Thornton, as first organized, would be no obstruction, under said section 5, to the organization of the village of Harvey." The words, "town" and "township," are here used interchangeably as having the same meaning, Thornton being spoken of as a town or a township. In *People ex rel.* v. *Village of Harvey*, *supra*, we also said: "When Cook county adopted township organization, and the town of Thornton was organized, it became a 'local subdivision of the State, created by the sovereign will, without the particular solicitation or consent or concurrent action of the people who inhabited it,' and the law terms it a *quasi* corporation only. [Citing authorities.] It is an involuntary organization for governmental purposes. An incorporated town, within the meaning of the statute regulating the organization of cities and villages, is 'a village or a small collection of residences which has become incorporated for the better regulation of their internal police,' etc."

In *People* v. *Martin*, 178 Ill. 611, we said (p. 621): "A town, organized under the township organization laws of the State, is, as before said, a political or civil subdivision of a county. It is created as a subordinate agency to aid in the administration of the general State and local government. The distinction between such a town and other chartered municipal corporations proper, sometimes denominated towns, is, that a chartered town or village is given corporate existence at the request or by the consent of the inhabitants thereof for the interest, advantage or convenience of the locality and its people, and a town under township organization is created almost exclusively with a view to the policy of the State at large for purposes of political organization, and as an agency of the State and county, to aid in the civil administration of affairs pertaining to the general administration of the State and county government, and is imposed upon the territory included within it without consulting the wishes of the inhabitants thereof." (See also *People* v. *Town of Thornton*, 186 Ill. 162). In the latter case, we said: "The town of Thornton was not changed by the act of 1869 from a township into an incorporated town." It was also there said: "It has been expressly held by this court, that a town, created under a township organization, is not an incorporated town in the proper sense."

We recognize and indorse to the fullest extent the principle contended for by the appellant, that the law of eminent domain must be construed strictly, and that the authority to condemn property must be clear and not doubtful. (1 Lewis on Eminent Domain,—2d ed.—secs. 240, 254). But we are of the opinion that, here, there is shown a clear right to condemn the property described. (2 Lewis on Eminent Domain,—2d ed.—sec. 353). The right to take private property against the consent of the owner is in derogation of private right and depends wholly on statutory regulation, and, hence, when this

extraordinary power is used, there must be a strict compliance with all the provisions of the statute. But "a strict compliance with the statute does not necessarily mean a literal and exact compliance." (1 Lewis on Eminent Domain,—2d ed.—sec. 253). Being of the opinion, that the Cemetery act uses the word "township" in the sense of the word "town," as above defined, we are of the opinion that the power to condemn was conferred upon the town of Scales Mound.

Even if the town of Scales Mound was an incorporated town, this court has held that an incorporated town and an incorporated village mean the same thing. (*Martin* v. *People ex rel.* 87 Ill. 524). The Supreme Court of the United States, following the doctrine laid down in *Martin* v. *People ex rel. supra*, has held that in Illinois an incorporaetd town and an incorporated village are one and the same thing. (*Enfield* v. *Jordan*, 119 U. S. 680). Inasmuch, therefore, as under section 5 of the act in regard to cemeteries, a village is vested with the power of acquiring land by condemnation, then, under the authorities which hold a village and an incorporated town to be the same thing, the appellee, as an incorporated town, would possess the power of condemnation conferred by the act upon villages.

Appellant also contends, that his motion to dismiss should have been granted upon the alleged ground that the petition does not state that the cemetery is to be for the use of the public, but limits it to the use of the inhabitants of the town of Scales Mound. Counsel for appellant refer to cases in other States where cemetery associations organized by private parties seek to acquire land by condemnation, and in such cases the petition must show that the privilege of interment is open to the public. (2 Lewis on Eminent Domain,—2d ed.—sec. 353). But, in the case at bar, the petition is filed in strict accordance with the statute, and by a town created for purposes of political organization and as an agency of

the State and county. The petition shows, that the cemetery, owned by the town of Scales Mound, has been in existence for some forty years, and that it belongs to the town, and not to private individuals. It is the property of a representative and agency of the general public; and the object of the present condemnation proceeding is merely to acquire additional land, found by the town authorities to be needed for cemetery purposes.

In *Farneman* v. *Mt. Pleasant Cemetery Ass.* 135 Ind. 344, it was held that a petition to annex land to a public cemetery, which stated that the petitioner was a corporation owning and controlling a public cemetery in, etc., and that, in the opinion of its trustees and directors, it had become necessary to purchase the realty therein described for its use as an addition to such cemetery, etc., sufficiently showed a purpose to condemn the land for a public use. For these reasons, we think that the allegations of the petition in this record are sufficient.

*Second*—It is claimed on the part of the appellant, that the verdict is inadequate in view of the testimony in the case. The jury allowed the appellant, as compensation for the two acres, the sum of $160.00, or $80.00 per acre. The testimony of appellee's witnesses fixed the value of the land all the way from $50.00 to $65.00 per acre, while most of appellant's witnesses fixed the value at $70.00 per acre, though there was testimony tending to show a higher value than $70.00 per acre. The testimony on the subject of value was, as usual, conflicting. A verdict will not be set aside where the evidence is conflicting, even though it may be against the weight of evidence, unless it is apparent that the jury have been actuated by passion or prejudice. (*Miller* v. *Balthasser*, 78 Ill. 302; *Brown* v. *Pierce*, 80 id. 214). Upon which side the preponderance of the evidence is in a given case is a question for the jury. The evidence does not show that the taking of the two acres will cause any material damage to the balance of the land not taken.

We do not regard the finding of the jury upon the subject of the value of the two acres as being so far opposed to the weight of the testimony, as to justify us in setting aside the judgment upon that ground.

*Third*—Counsel for the appellant also complain, that there was error in certain instructions given to the jury by the trial court on behalf of the appellee. The only instructions, given for appellee, to which objections are pointed out in the brief of counsel are the first, second and fourth. The only criticism made upon the first instruction is the use of the following words: "And they are further instructed that they are not to consider the price which the property would sell for under special or extraordinary circumstances, but its fair cash market value if sold in the market, under ordinary circumstances, for cash, and not on time, and assuming that the owners are willing to sell and the purchaser is willing to buy." It is sufficient to say in regard to this instruction, that this court has approved of an instruction, containing the same language, in *Brown* v. *Calumet River Railway Co.* 125 Ill. 600. (See, also, as to the same form of instruction, *Kiernan* v. *Chicago, Santa Fe and California Railway Co.* 123 Ill. 188, and *Calumet River Railway Co.* v. *Moore,* 124 id. 329).

The second instruction is criticised for the use of the following language, to-wit: "The court further instructs the jury that, while it is proper for witnesses, in making their estimate of damages to be allowed the defendant, to take into consideration any use to which they believe from the evidence the property in question may be profitably appropriated, yet the jury are not bound to base their verdict upon the supposition that it would be appropriated to a use other than that to which it is now devoted." The language used in this instruction was used by this court in *Snodgrass* v. *City of Chicago,* 152 Ill. 600; and upon the authority of the latter case the instruction cannot be regarded as erroneous upon this account.

The fourth instruction is criticised because of the use therein of the following language: "Just compensation means the payment of such sum of money as will make the defendant whole, so that, on receipt by the defendant of the compensation and damages awarded, he will not be poorer by reason of his property being taken or damaged." In *Metropolitan West Side Elevated Railway Co.* v. *Stickney*, 150 Ill. 362, it was held that this language, used in an instruction given in that case, was an accurate statement of the law.

Appellant also complains, that the court refused to give an instruction, which he asked, in reference to a certain road running along the south side of the two acres proposed to be condemned. The instruction told the jury that, if they believed from the evidence that, by the taking of the two acres in question, appellant's interest in such road should be damaged, then, in making up their verdict as to what damages should be awarded him to the land not taken, they would have a right to consider his interest in the strip of land used for a road. There was no evidence in the record showing, or tending to show, that the road would ever be abandoned, nor was there any evidence showing, or tending to show, to what extent the interest of the appellant in the road would be damaged by the taking of the two acres. Instructions should be based upon the evidence. We do not think that the court below committed any error in refusing the instruction.

*Fourth*—Upon the motion for new trial made by appellant, he introduced his own affidavit to the effect that the verdict of the jury was the result of chance, and was not the deliberate judgment of the jury. The affidavits of five jurors were introduced denying the charge made against the jury, so that, if it was proper to introduce the affidavits so made by the jurors and by appellant, the statement in appellant's affidavit was overborne by the affidavits introduced in opposition to it. But we have

held that the affidavits of jurors, made after the trial, will not be received to impeach their verdict; nor will affidavits as to statements made by jurymen be received to impeach their verdict. (*Heldmaier* v. *Rehor*, 188 Ill. 458; *Palmer* v. *People*, 138 id. 356; *Sanitary District* v. *Cullerton*, 147 id. 385; *Smith* v. *Smith*, 169 id. 623; *Bonardo* v. *People*, 182 id. 411.) The statement, made in the affidavit of appellant, could only have been made by him upon information and belief, as it would have been improper and contrary to law for the appellant himself to be present in the jury room while the jury were deliberating upon the subject of their verdict; and, in *Bonardo* v. *People, supra,* it was held that an affidavit, setting up that the verdict of a jury was the result of chance must not be upon the belief and information of the affiant. (*City of Pekin* v. *Winkel*, 77 Ill. 56.)

*Fifth*—Some objection is made to the admission in evidence by the court of a certain plat or map of the cemetery, and of certain by-laws or rules in relation to the management and control of the cemetery. It is sufficient to say that the counsel of the appellant, in his cross-examination of certain witnesses, called out testimony in reference to a portion of the contents of these by-laws and of this plat. Thereafter, the court permitted the by-laws and plat to be introduced in evidence in order to show all of the contents thereof, inasmuch as appellant had proven the contents of a part thereof. The evidence also tended to show that appellee was maintaining a cemetery at this time. There was no error committed by the court in its ruling upon this subject.

We discover no error in the record, which would justify us in reversing the judgment. Accordingly, the judgment of the circuit court is affirmed.

*Judgment affirmed.*