*Judgment reversed.*

---

(No. 14954.—Judgment affirmed.)
THE CRYSTAL LAKE PARK DISTRICT, Appellee, *vs.* THE CONSUMERS COMPANY *et al.* Appellants.

*Opinion filed October 28, 1924.*

1. EMINENT DOMAIN—*when corporate existence of petitioner cannot be questioned.* A proceeding by a park district to acquire land for park purposes cannot be defeated by an attempt to show that the park district was not legally organized where there is a statute authorizing its creation and a proceeding had for such organization, as the legal existence of a *de facto* corporation can not be questioned except by the people in a direct proceeding.

2. SAME—*when county court cannot pass upon question of title.* Where a proceeding in chancery is pending in the circuit court to determine the conflicting interests of defendants to a petition for condemnation, the county court has no jurisdiction to determine the question of title but its jurisdiction is limited to the ascertainment of the amount of compensation; and the petitioner is not required to await the final determination of the disputed interests where the compensation money is ordered paid to the county treasurer to abide the result of the chancery suit.

3. SAME—*when appellants cannot raise question of public use by co-defendant.* Where a large tract of land is condemned for park purposes on the petition of a park district, appellants, who seek to reverse the judgment as to their lands, cannot raise the question that the petitioner was not entitled to the condemnation of a portion of the tract owned by the city on the ground that it was already devoted to public use, where the city did not appeal from the judgment of condemnation.

4. SAME—*when witnesses for petitioner are competent.* Witnesses for the petitioner in a condemnation proceeding are competent to testify as to the value of the property to be taken where they are acquainted with the property and have knowledge of real estate values either through the real estate or loan business, as assessors, or as owners of near by property.

5. SAME—*what does not disqualify witnesses.* Where the property condemned is not subdivided, the fact that petitioner's witnesses have had no experience in the subdivision of similar property does not render them incompetent to testify as to value, as the petitioner is entitled to introduce evidence of market values on its own theory, regardless of the theory of the defendants that the property is valuable for subdivision.

6. SAME—*burden rests on petitioner to prove value of property.* Defendants to a condemnation proceeding are entitled to the fair cash market value of their property for its most profitable use, but the burden of introducing evidence as to the value of the property sought to be taken rests on the petitioner.

7. SAME—*what is the "market value" of property.* The term "market value," as used in condemnation proceedings, means the fair cash market value of the property in view of any and all uses to which it may be applied or adapted or the highest price the property will bring for the best use to which it is adapted, but what constitutes market value is a question of law and not of fact.

8. SAME—*the jury may inspect property in determining market value.* The jury in a condemnation case are entitled to inspect the land, and from such inspection and from all the evidence offered they are to determine what is the fair cash market value of the land for the best use to which it is adapted.

9. SAME—*evidence of unexecuted contract of sale is not competent on question of value.* Evidence of the option, proposals and discussions leading up to a contract for the sale of the property involved in a condemnation proceeding is not competent to prove its value, where the contract was never executed and where the price stated therein included other land not involved in the proceeding.

10. SAME—*details of the method of improving property are not competent evidence.* In a proceeding for condemnation of a large tract of swamp and slough land for park purposes, it is competent to prove that the swamp and slough could be filled up so as to render the property adapted to subdivision, but it is not competent to go into detail as to the method of improving the property by showing that one of the property owners is a corporation having a large number of motor trucks and owning convenient gravel pits, from which the land could be filled up at small expense.

11. SAME—*when offers of evidence in presence of jury are improper.* Where objections are sustained to questions asked of witnesses in a condemnation proceeding, offers of proof relating to the subject sought to be brought out are improper in the presence of the jury, where such offers are equivalent to statements of what the answers would have been.

12. SAME—*when future use of property may be shown.*  In a condemnation proceeding the owner is entitled to the market value of his property for the most profitable use for which it is available, and where the property has a present capacity for a future use which may be anticipated with reasonable certainty and made the basis of an intelligent estimate of value, such capacity may be considered by the jury if it in fact enhances the market value of the land in its present condition and state of improvement.

APPEAL from the County Court of McHenry county; the Hon. CHARLES P. BARNES, Judge, presiding.

WINSTON, STRAWN & SHAW, McKINLEY & SCHMAUCH, C. PERCY BARNES, and CHARLES T. ALLEN, (JOHN D. BLACK, and JOHN P. McKINLEY, of counsel,) for appellants.

FRED B. BENNETT, (JOSLYN & JOSLYN, and WILLIAM L. PIERCE, of counsel,) for appellee.

Per CURIAM:  Appellee, the Crystal Lake Park District, filed in the McHenry county court its petition praying that just compensation to be paid for 26.85 acres of land to be acquired for a park for the use and benefit of the public should be ascertained.  The appellants, the Consumers Company, as owner of the fee, and trustees under trust deeds securing incumbrances upon the property, were made defendants, together with the city of Crystal Lake and Michael Fitzgerald, tenant of a portion of the property.  There was a preliminary hearing before the court of issues raised as to the legal existence of the park district, its power to condemn and the ownership of the land, which were decided in favor of the petitioner.  Following the preliminary hearing there was a trial by jury and a verdict fixing the compensation in several amounts for different tracts, aggregating $19,250, and no damage to other lands of the appellants.  The court overruled a motion of the appellants, the Consumers Company and the trustees, for a new trial and

entered judgment on the verdict, from which this appeal was prosecuted.

At the preliminary hearing the petitioner offered in evidence proceedings in the county court of McHenry county for the organization of the Crystal Lake Park District and the passage of an ordinance by the park board to acquire the land in question for park purposes, and the objection of the appellants that the petitioner had no authority to maintain the proceeding was overruled. There was a statute authorizing the creation of park districts and a proceeding under that statute for the organization of the petitioner as such a district. It thereby became a corporation *de facto* and entitled to exercise all the powers of a park district as against the appellants and all the world except the people of the State, and then only by a direct proceeding in *quo warranto,* in which those assuming to exercise the franchise emanating from the sovereign could be called upon to show their authority. Even when so called upon after user and under circumstances which would render it unjust the corporate existence could not be questioned. The proceeding to acquire land for park uses was collateral to any question as to the existence of the district, and such a proceeding cannot be defeated by an attempt to show that the park district was not legally organized. (*Renwick* v. *Hall,* 84 Ill. 162; *Osborn* v. *People,* 103 id. 224; *Blake* v. *People,* 109 id. 504; *Lees* v. *Drainage Comrs.* 125 id. 47; *Brown* v. *Calumet River Railway Co.* id. 600; *Morrison* v. *Forman,* 177 id. 427; *Eddleman* v. *Union County Traction Co.* 217 id. 409; *Chicago and Western Indiana Railroad Co.* v. *Heidenreich,* 254 id. 231.) The court did not err in overruling that objection.

The appellants moved the court to find and determine the titles of the defendants in all the property described in the petition, and the court heard the evidence respecting such titles. Included in the property was a tract called the "half-moon," embracing the beach or frontage on Crystal lake,

and as to that tract the city of Crystal Lake answered, asserting an interest in it by dedication, prescription and adverse possession as grounds for the inhabitants of the city and the general public for playgrounds, public entertainment, use and enjoyment.   The court found that the Consumers Company was the owner in fee of all the lands sought to be condemned except the half-moon, and as to that tract it was stipulated that there was a suit pending in the circuit court of McHenry county in chancery, instituted by the city of Crystal Lake against the Consumers Company, in which the city claimed such dedication.   The circuit court having acquired jurisdiction in the chancery suit to determine the question whether the city of Crystal Lake had an easement in the half-moon, the county court declined to decide that question and ordered the compensation for the half-moon to be paid to the county treasurer to abide the result of the chancery suit.   The petitioner could not be postponed in acquiring all titles to the half-moon for a public use until the final determination of the chancery suit as to the respective interests, where the award would be disposed of in place of the property.   It was not the province of the county court to pass upon the question of conflicting titles, which was already in the hands of a court of competent jurisdiction.   The jurisdiction was to cause the compensation for the property to be ascertained and provide for the preservation of the compensation money as a substitute for the property.   *Chicago and Northwestern Railway Co.* v. *Miller,* 251 Ill. 58; *Eddleman* v. *Union County Traction Co. supra.*

The city of Crystal Lake in its answer, besides claiming an easement in the half-moon, denied that the petitioner had any right to condemn that tract because it was already devoted to a public use for park purposes, and appellants say that the decision of the court was wrong, because property already devoted to a public use cannot be again taken for the same use.   The city of Crystal Lake, which set up

that claim, did not appeal but was content with the judgment. The appellants by their answer in the chancery suit and their answer and cross-petitions in this proceeding denied that the city had any interest in the premises, and they do not represent the city or any right or interest it may have. They are not entitled to raise the question.

It is alleged as error that the court admitted in evidence the files in the chancery suit, which were admitted to show the jurisdiction of the chancery court, but whether they were competent is of no importance, because the facts concerning the chancery suit had been stipulated.

The appellants, by their answer and cross-petitions of the Consumers Company and the trustees, alleged that they were the owners of 1140 acres constituting a large tract of land and including the property to be condemned, which was taken out of the center, with a frontage of 1452 feet along Crystal lake, and the remaining land not taken would be damaged and depreciated in value. The cause came on for trial on the petition and cross-petitions, and after the jury was empaneled it was stipulated that the property should be divided, for the purposes of the trial, into four tracts, to be known as tracts 1, 2, 3 and 4, and that the other lands described in the appellants' cross-petitions should be known and referred to as tract 5. The half-moon was tract 3. Tracts 1 and 2 were slough and swamp land, where water stood and was stagnant in warm weather. At least 20 acres of the land was swamp and slough, and there were a great many muskrat houses on it, particularly on tract 2. The witnesses for the petitioner gave opinions as to the fair cash market value of the several tracts at the time the petition was filed and in its existing condition. The position of the appellants was that the swamp and morass could be filled at no very great expense and would then be suitable for subdivision and homes, and that this fact very greatly increased the market value. The evidence

for the appellants was devoted to proving market values in view of the adaptation of the property to subdivision.

It is insisted that the court erred in permitting witnesses for the petitioner not qualified to give their opinions as to the market value of the property. Seventeen witnesses testified to such values and showed themselves to be qualified under the rules declared by this court in *Illinois and Wisconsin Railroad Co.* v. *VonHorn,* 18 Ill. 257, *Keithsburg and Eastern Railroad Co.* v. *Henry,* 79 id. 290, *Johnson* v. *Freeport and Mississippi River Railway Co.* 111 id. 413, and *Chicago and Western Indiana Railroad Co.* v. *Heidenreich, supra.* They were acquainted with the property and had knowledge of values, acquired either by valuing real estate for loans, being in the real estate business, as an owner of property near by, assessing real estate, or in similar ways. It is said, however, that none of them had had any experience in the subdivision of lake property. The appellants were entitled to the fair cash market value of the property for its most profitable use, and the burden of introducing evidence as to the value of the property sought to be taken rested on the petitioner. (*Mauvaisterre Drainage District* v. *Wabash Railway Co.* 299 Ill. 299.) The appellants had the right to show the value of the land for the best use to which they thought it was adapted. The witnesses for the appellants were experienced in subdividing property, and gave their opinion that the most profitable use of the land was for subdivision purposes and that it was very valuable for that purpose. It was no duty of the appellee to adopt the appellants' theory as to the use to which the land was best adapted, but it was its privilege to produce such proper testimony with reference to that use and the value of the land as it saw fit. It was proper for it to introduce evidence of the market value of the land on its own theory, regardless of the alleged value of the property for subdivision purposes. The appellee inquired of its witnesses as to their judgment of the fair cash market value of the prop-

313—26

erty. Market value, within the meaning of the rule in condemnation proceedings, is the fair cash market value of the property in view of any and all uses to which it may be applied or adapted. What constitutes market value is a question of law and not of fact. (*City of Chicago* v. *Farwell,* 286 Ill. 415.) The term "market value" means the highest price property will bring for the best use to which it is adapted. The jury were properly instructed as to its meaning. They were entitled to inspect the land and from such inspection and from all the evidence offered determine what was its fair cash market value for that use. (*Phillips* v. *Town of Scales Mound,* 195 Ill. 353; *Ligare* v. *Chicago, Madison and Northern Railroad Co.* 166 id. 249.) There was no error in admitting evidence for the petitioner.

It is urged that serious and prejudicial error was committed in excluding evidence offered by the appellants. Stated in the exact language of the appellants' counsel in their brief, this is what occurred: In cross-examining John Hoy the appellee's counsel developed that Hoy and Keating and two other men (Wagner and Kreutzler) had an option at the time of the trial to buy from the Consumers Company the property sought to be condemned and a strip of land 400 feet wide south of the cemetery road, which runs east and west south of the property sought to be condemned, excepting a strip 200 feet wide crossing the half-moon piece; that they had such a contract, which was never signed; and that if a lot of minor details, including this lawsuit, could be ironed out they expected to close the deal. The appellee's counsel questioned Hoy further as to the details of the contract, and he stated that it had been drawn up by the Consumers Company and submitted to the attorney for the four proposed purchasers, who had criticised some of the language of the contract and sent it back to the Consumers Company for correction. The witness described the property included in the contract as well as some of the buildings located on it and gave the value of such buildings, and,

in response to questions of the appellee's counsel, further testified that the contract called for a price of $160,000, and that certain elements were not taken into consideration in fixing this price.  The appellants' counsel then, upon re-direct examination, asked witness whether in the discussion of the proposed contract there was any talk with the Consumers Company about what value was to be put on the Mansion house, (a large house on the Mansion piece, south of the property sought to be condemned,) and the court sustained an objection to the question.  Counsel then offered to show that in such discussion it was stated that the Mansion house had no value for the purpose of the trade and was not to be considered as having any value, to which offer the court also sustained an objection.  Counsel then inquired of the witness if at any of the meetings leading up to the drafting of the contract there was any discussion or mention of any price on this property, but an objection to the question was sustained.  Counsel then offered to show that there was a discussion of the prices which were to be paid by Hoy and his associates for the property mentioned in the contract, and a discussion as to the different parcels of land that went to make up the amount that was included in the contract, and whether the total price of $160,000 was to be paid for the property as a whole or divided into parcels.  The court sustained objections to all of these offers and explained to counsel that he considered all of the evidence in regard to the contract as improper and irrelevant, and that he would have excluded the portion of it introduced by the appellee if objection had been made thereto by the appellants' counsel.  The appellee's counsel had explained to the court that he simply asked his questions concerning the contract for the purpose of showing the witness' interest in the matter and that he was thereby a prejudiced witness against the appellee.  The court did allow the appellants, on re-direct examination, to examine the witness as to all matters that had been drawn out by the

appellee.   The court also refused to allow the appellants to offer a copy of the proposed contract.

The rulings of the court were correct.   The price of $160,000 included other lands, and it, as well as the evidence about the Mansion house, would have led to collateral inquiry about comparative value.   Besides, there was nothing in the contract, by way of offer or otherwise,—if it be considered as an offer,—that would be of any value to the jury in the valuation of the premises sought to be condemned.   The contract was not an executed contract, and the evidence as to discussions, sought to be brought out by the appellants' counsel, was improper.   His inquiry was as to what was said about values, etc., in discussions leading up to the making of the option or the contract.   Counsel certainly do not mean to contend that this was proper evidence.   It was only the final conclusion written in the contract, or prices in the contract with reference to the property in question, that could have under any circumstances been proper for the consideration of the jury.   An examination of the contract as it appears in the record furnishes no information whatever, so far as we can gather it, as to the value of any tract in it that is the subject of inquiry in the present suit.   We do not think the court has erred in its ruling on this evidence, and we feel very sure that the appellants were not prejudiced by the ruling.

The claim of the appellants was that the swamp land could be made available for subdivision by filling, and there was evidence to that effect, together with the number of yards of material required and the fact that the Consumers Company owned convenient gravel pits.   The appellants then attempted to show that the Consumers Company owned 125 gasoline trucks suitable for carrying gravel and dirt in six-ton lots; that the trucks were kept in Chicago and the road between Chicago and Crystal Lake was good.   They also offered to show the expense of operating the trucks per day and how many could run back and forth without inter-

fering with each other, and an objection to the offer was sustained. It was legitimate to prove that the swamp and slough could be filled up, as every juror would know that when filled it would cease to be swamp and slough and be fitted for the ordinary uses of property; that it would then be adapted to subdivision, and that the present market value would be greatly enhanced above the cost; but to go into detail as to the advantage of ownership of trucks to do the work, and the other matters offered to be proved, was not only unnecessary but would have raised collateral questions to the distraction of the jury.

In several instances when a question was asked of a witness and an objection sustained there would be an offer of proof relating to the subject and equivalent to a statement of what the answer would have been. The offers were not permitted. Such an offer is a means of getting before the jury the supposed testimony of the witness as stated by counsel and whether he would testify to the facts as stated or not. It is not ordinarily a proper practice, and the court did not err in refusing to permit the offers to be made in the presence of the jury.

There were some embarrassing situations which arose during the trial on account of side remarks and comments of the attorneys and their conduct. In these situations the court made every effort to maintain the decorum necessary to the administration of justice and the respect of litigants and the public. An examination of the entire record shows that counsel for neither side were favorites of the court in the sense of a showing of partiality, and the court was compelled, in order to have counsel comply with his rulings, to say unpleasant things to counsel for both sides, and both counsel shared about equally in eliciting condemnatory remarks of the court as to their conduct as the trial proceeded. During the whole course of the trial the court was fair, just and impartial and endeavored to protect and secure the rights of each party, giving them every opportunity

to prove their rights and protect their interests but insisting that proper decorum should be observed. There is no good ground for the complaint made in that respect.

It is next alleged that the court erred in giving instructions 7, 11 and 12, which were of the same character and related to market values on account of possible future uses, depending upon vague and uncertain contingencies. Instruction 7 is as follows:

"You are instructed that though you may believe from the evidence that on January 17, 1922, the highest and best use of the property in question sought to be condemned might possibly at some remote future date be for subdivision for home sites, still if you further believe from the evidence that such use depends upon vague or uncertain conditions or contingencies, and that such proposed use is merely speculative, then you have no right to consider at all any evidence of its adaptability for such use."

It referred the jury to the evidence and correctly stated the law. Instruction 11 was of the same character, and told the jury that the prospective use must be such as affected the market value of the land, and instruction 12 repeated the same rule of law. The owner of property appropriated for public use is entitled to its market value for the most profitable use for which it is available, and any capacity for future use which may be anticipated with reasonable certainty, though dependent upon circumstances which may possibly never occur, is competent to be considered by the jury if it in fact enhanced the market value of the land in its present condition and state of improvement. The future prospective use affecting value must be a present capacity for a use which may be anticipated with reasonable certainty and made the basis of an intelligent estimate of value. *Pittsburg, Cincinnati, Chicago and St. Louis Railway Co.* v. *Gage,* 286 Ill. 213; *Forest Preserve District* v. *Kean,* 298 id. 37.

It is urged that the court erred in denying a motion for a new trial because the verdict was contrary to the evidence. The amounts found by the jury were practically the highest estimates of the witnesses for the petitioner, while the witnesses for appellants, having in view the prospective use of the property for subdivision, estimated the value at a minimum total of $45,500 and a maximum of $96,500. They placed the damage to the property not taken at a minimum of $33,500 and a maximum of $48,750. The allowance, in the aggregate, for land taken was $19,250 and nothing was allowed for damage to other lands. The judgment of the jury finally rested on the question whether the property was of greater value on account of the prospective use, and no credit was given to the opinions of witnesses of the appellants on that subject. Crystal Lake is a city of 2500 or 3000 people, and some property that has been subdivided many years has not brought about any sales or made any profit; but the property is not a great distance from the city of Chicago, which the witnesses for appellants testified made it desirable for subdivision and homes. The verdict fairly represented the present value regardless of prospective use, and it cannot be said that it was the result of passion or prejudice or that it had no reasonable foundation in the evidence. The court could not say, as a matter of fact, that even if the property were filled so that it could be used for subdivision, such a use could be anticipated with reasonable certainty and would increase the market value. It was a fair question for the jury whether appellants would suffer damage by depreciation of their other lands, with their adaptation for subdivision and private residences, by bringing disorderly crowds of bathers, especially on Sunday, or would not have such effect on the market value.

There is nothing in the record which would justify a reversal of the judgment, and it is affirmed.

*Judgment affirmed.*