(No. 1984—■

WILLIAM LEPSKI, ADMINISTRATOR OF THE ESTATE OF ORILLA GARWOOD, DECEASED, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed December 14, 1937.*

WILLIAM G. THON AND DAVID G. STONE, for claimant.

OTTO KERNER, Attorney General; MURRAY F. MILNE, Assistant Attorney General, for respondent.

Mr. Justice Linscott delivered the opinion of the court:

Claimant brings this suit in this court as Administrator of the Estate of Orilla Garwood, deceased, and seeks an award of $18,000.00, alleging that in the construction of a highway, the State caused damage to her property in that sum.

In July, 1931, deceased was the owner of a tract of land described as follows, to-wit:

Beginning 296.8 feet East of the Northwest corner of the Northeast quarter of Section Fourteen (14) Township Forty-six (46) North, Range Nine (9) East of the Third Principal Meridian; thence South fourteen degrees East 588 feet; thence South 510 feet and being the Southwest corner of real estate conveyed to Harmon A. Garwood by deed dated March 19, 1912 and recorded in the Recorder's office of Lake County, Illinois, in Book 181 of Deeds on page 601; thence East from said point of beginning 290 feet along the South line of said real estate of Harmon A. Garwood; thence South 226 feet; thence West parallel with the North line 290 feet; thence North 226 feet to the place of beginning; situated in the County of Lake and State of Illinois (except that part North of State Route Highway Number 173.

At that time, the land was bisected by a gravel road. Some four acres of land lay north of the road, and some two or three acres of this land were submerged, and some six acres lay south of the road. The State built Route 173 in 1931 and the road seems to have been relocated and claimant's intestate conveyed a right of way for highway purposes to the State for $150.00. The State proceeded with the construction of the highway on the right of way so acquired.

From the testimony it would appear that the grade of the new roadway was some four feet higher than the grade of the old gravel road. The strip of land deeded to the State was some 290 feet long and the grade in front of the house, about eight and one-half feet, we assume, above the level of a nearby lake, and as one proceeds westerly this grade increases so that on the west line, it is several feet higher. No claim is made for the property so deeded. The adjoining lake is known as Channel Lake.

Owing to the great variance in the testimony of the witnesses for the State and the witnesses for the claimant, this court went to the premises in question, and viewed the roadway, the premises and adjacent property.

It is contended by claimant that she had sold approximately four acres abutting Channel Lake, being the north four acres of the tract, and also being north of the highway, for the sum of $7,000.00, and because of the increase grade

in the highway built by the State, the south part of the land, consisting of approximately six acres had been greatly damaged.

We found a very uneven tract of land on the south side of the road grown up with weeds, with a sign located therein advertising "Worms for Sale." The claimant no longer has any interest in the land north of the road. There were some trees on the premises; a part of the premises had been used as a sand or gravel pit, and an old dilapidated house, barely fit for human habitation, was located on the south six acres.

It would serve no purpose to review the evidence in detail. A part of this six acres, and a comparatively small part, had been used for gardening, and it is contended that the highway built and known as Route 173 cut off the drainage of this land, and also cut off a view of the lake from the house, being a story and a half high. It is also contended that the approach driveway from the highway onto the premises was short and steep, and people were reluctant to drive with automobiles or other vehicles down onto the premises. From a view of these premises, it would appear that there were not many occasions when one would find it convenient or necessary to drive down upon the six acre tract. The sand and gravel pit it appears, has been abandoned.

We have, however, carefully examined the testimony of Francis S. Baker, a Chicago realtor, a witness for the claimant. He testified that he had known the property for two years prior to 1931, and that before the highway was built, the value of the six acres lying south of the road was $2,800.00 per acre and that after its construction, the total value was $5,000.00, and that he had considered the future use of the property, that is, the six acres in fixing this value.

It appeared to the court, as we viewed the premises in question, and the surrounding territory, that there were not many homes in either direction in close proximity to the house in question, and the testimony of Mr. Baker is not persuasive as to value.

Claimant herself testified that at one time she had been offered $25,000.00 for all of the premises, and that this offer had been made by an ice man, and it also developed that he was related to her. Like Mr. Baker's testimony, that also was not convincing to the court.

A witness for the State, Mr. Robert C. Abt, a man who had a vast amount of experience in real estate business for a period of fifteen years in that vicinity and who knew the property in question, and had seen it many, many times, both before and after the construction of the highway, testified that the house was about sixty-five years old and in a poor state of repair; that the six acres of land, prior to the construction of the highway, that is prior to July 1, 1931, had been used for a gravel pit; that the elevation of the premises on the six acres in question, had been materially changed; that the entire property consisted of holes where sand and gravel had been removed; that there was always an incline at the point of approach to the new highway; that there is adjoining the property, ninety acres of a subdivision to the east and south of these six acres, about three per cent of which had been sold and improved prior to the construction of the highway for summer cottages; that the highest and best use of that portion of the Garwood property before construction was for a gravel pit and that after construction, the highest and best use, was the same; that neither before or after construction, was the property in question desirable for subdivision purposes; that the cost of putting the property in condition would not justify the expense; that the fair cash market value immediately prior to the construction of the highway was $250.00 per acre and that the fair cash market value immediately after the construction, was $250.00 per acre; and this in the main is the testimony of Mr. Meinersmann, a real estate man with vast experience in selling real estate in that vicinity, with possibly the exception that he was of the opinion that the building of the highway had improved the property.

In *Lampp* vs. *State*, 6 C. C. R. 349, and in *Baber* vs. *State*, opinion filed by Court of Claims December 11, 1935, and rehearing denied February 9, 1937, this court held that a claimant is not entitled to an award for damages to land not taken where compensation has been paid for land taken; in a voluntary conveyance of a right of way over land to the State it will be conclusively presumed that all damages were included in the consideration paid for such conveyance the same as an assessment of damages in a condemnation suit would be presumed to embrace.

The claimant had testified that she had discussed the change of grade with three men from Waukegan. Presumably, they were representatives of the Highway Department, and she was told by them that the grade would not be changed more than four feet, and presumed that she meant four feet higher than the old gravel road, and a fair construction of the testimony is that the old gravel road had a grade of about four feet higher than the surrounding land.

This court and other courts are committed to the rule that where damages are allowable for property not taken, the measure of damages is the difference in the fair cash market value of the property before and after the construction; said value being based on the highest and best use for which the property was and is so immediately available as to affect the fair cash market value.

The Attorney General argues that the claimant in this case is not entitled to an award for the reason that she has been paid for the land actually used, and for the reason that it must be conclusively presumed that all the damages were included in the consideration paid her for her conveyance the same as an assessment of damages on a condemnation would be presumed to embrace, and cites *Lampp* vs. *State,* 6 C. C. R. 349 and *Baber* vs. *State,* opinion filed by Court of Claims December 11, 1935, rehearing denied February 9, 1937.

The fair cash market value is the price which a given piece of property will bring if sold on the market under ordinary circumstances, for cash, assuming that the owners are willing to sell and the purchaser is willing to buy. *Phillips* vs. *Town of Scales Mound,* 195 Ill. 353.

The Attorney General argues that the claimant has no right to recover in this case because of the conveyance and dedication to the State by claimant's intestate, which has the same effect as a judgment in a condemnation proceeding, and bars the claimant from a recovery, and cites *C. R. I. & P. Ry. Co.* vs. *Smith,* 111 Ill. 363, wherein the court said:

"We regard the deed from Burcky, for the public use of this railroad, as having the same effect upon the rights of the parties, with respect to lot 11, that a condemnation of the same land for such public use would have had, —the one being a voluntary conveyance made for a public use, and the other amounting to a statutory conveyance for such use. Had this right-of-way been acquired by condemnation, Burcky would have had made to him compensation for the value of the strip of land one hundred feet wide taken, and also an assessment of all the damages to the residue of lot 11 to result from

the operation of the railroad. The rule is, that the appraisement of damages in a case of condemnation embraces all past, present and future damages which the improvement may thereafter reasonably produce. Mills on Eminent Domain, Sec. 216, and cases cited; *Chicago and Alton R. R. Co.* vs. *Springfield and Northwestern R. R. Co.*, 67 Ill. 142; *Keithsburg and Eastern R. R. Co.* vs. *Henry*, 79 id. 290."

It follows that had the State condemned this right-of-way as against claimant's intestate, who was the owner of the land at and prior to the time of the construction of Route 173, no recovery could have been had for the damages here sued for. Such damages would have been included in the assessment of damages made on the condemnation, and whether in fact included or not, they would have been conclusively presumed to have been included. The same result, we conceive, follows from claimant's intestate's voluntary conveyance of the right-of-way.

In *Atterbury* vs. *C. I. & St. L. Ry. Co.*, 134 Ill. App. 330, the court held that:

"where a right-of-way for a railroad is conveyed by deed it will be conclusively presumed that all damages resulting to the balance of the grantor's land from the proper construction and operation of the railroad were included in the consideration paid therefor."

To the same effect is Lewis on Eminent Domain, Volume 2, Second Edition, page 702, section 293.

In the case of *Glenbard Golf Club, Inc.* vs. *State*, 8 C. C. R. 651, we held that:

"The burden is upon the petitioner to show the fair cash market value of the property, and alleged injury must be based upon lawful and proper elements of damage and not upon conjecture or speculation."

After a careful analysis of the testimony of the several witnesses for the claimant, we feel that their testimony is based upon conjecture and speculation.

In the case of the *City of Chicago* vs. *Lord*, 276 Ill. 571, the Supreme Court said at page 575:

"In ascertaining the compensation to be made to the owner of property appropriated for a public use he is entitled to its value for the most profitable use for which it is available. This availability, however, does not refer to a future possibility but to a present capacity for a use which may be anticipated with reasonable certainty and made the basis of an intelligent estimate of value. 'Possible or imaginary uses are to be excluded, nor can the owner show the probable future use of the property.' (*Chicago, Burlington and Quincy Railroad Co.* vs. *City of Chicago*, 149 Ill. 457.) 'Nothing should be allowed for imaginary or speculative damages or such remote or inappreciable damages as the imagination may conjure up and which may or may not occur

in all the future.' (*Jones* vs. *Chicago and Iowa Railroad Co.* 68 Ill. 380; *Peoria and Pekin Union Railway Co.* vs. *Peoria and Farmington Railway Co.* 105 id. 110; *Chicago and Northwestern Railway Co.* vs. *Town of Cicero*, 157 id. 48; *Chicago, Burlington and Quincy Railroad Co.* vs. *Reisch & Bros.* 247 id. 350."

The Attorney General points out that there is nothing in the record that shows any reasonably expected demand in the immediate future for subdivision of the property in question; that on the contrary, the record shows that this property is adjoined on the east and south by a 90 acre tract subdivided in 1927 in which only 3 or 4 per cent of the lots have been disposed of by the subdividers and built upon. He also points out that despite these facts claimant's evidence as to value is predicated upon the use of the six acres for subdivision purposes.

In *Phillips* vs. *Town of Scales Mound*, 195 Ill. 353, at page 362, the Supreme Court held:

"The only criticism made upon the first instruction is the use of the following words: 'And they are further instructed that they are not to consider the price which the property would sell for under special or extraordinary circumstances, but its fair cash market value if sold in the market, under ordinary circumstances, for cash, and not on time, and assuming that the owners are willing to sell and the purchaser is willing to buy.' It is sufficient to say in regard to this instruction, that this court has approved of an instruction, containing the same language." Authorities were cited herein.

Claimant has filed a brief, a supplemental brief and a reply brief to the Attorney General's brief and it is not claimed that the opinions of the Supreme Court herein quoted or the opinions of this court have been in any way modified or changed. As a matter of fact no comment is made thereon although counsel for claimant have been very diligent in citing authorities but this court has heretofore held that where private property is not taken but is damaged for public use, the property owner is entitled to recover, and the proper measure of damages is the difference in the fair cash market value of the property before and after the construction; said value being based on the highest and best use for which the property was and is so immediately available as to affect the fair cash market value, but in none of these cases cited by claimant, is it contended that the owner of the premises had, for a valuable consideration, conveyed the property taken.

As we view the facts herein, no award can be allowed in this case because of the conveyance by claimant's intestate to the State of the right-of-way, that having the same effect as a condemnation of the same land for such public use would have had, the one being a voluntary conveyance made for public use and the other amounting to a statutory conveyance for public use, the rule being that the appraisement of damages in a case of condemnation embraces all past, present and future damages which the improvement may thereafter reasonably produce.

An award, therefore, is denied.